UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————

MARCELINO ZAPOTECO, JORGE RIVAS,
AUNER GUARDADO HERNANDEZ, CARLOS
SEBASTIAN SANDOBAL, YANI MACARENO,
and FREDY ROJAS PEREZ, on behalf of
themselves and all others similarly situated,

                        **Plaintiffs,**

       - against -

RAPI, INC. d/b/a BRIOSO RISTORANTE,
PIETRO DIMAGGIO, RAFFAELE
DIMAGGIO, and LISA DIMAGGIO,

                      **Defendants.**

**Civil Action No. 1:20-cv-06335**

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

———————————————————————

        Marcelino Zapoteco, Jorge Rivas, Auner Guardado Hernandez, Carlos Sebastian Sandobal, Yani Macareno, and Fredy Rojas Perez ("Named Plaintiffs"), by their attorneys Gladstein, Reif & Meginniss, LLP and Make the Road New York, allege upon personal knowledge as to themselves and upon information and belief as to all other matters as follows:

### PRELIMINARY STATEMENT

1.     This action is brought by the Named Plaintiffs, on their own behalves and on behalf of similarly situated current and former employees of Defendants Rapi, Inc. d/b/a Brioso Ristorante, Pietro DiMaggio, and Raffaele DiMaggio (collectively, "the Brioso Defendants") at Brioso Ristorante ("Brioso"), an upscale Italian restaurant in Staten Island, New York. Although the Named Plaintiffs worked up to 14 hours per day, and up to 78 hours per week, the Brioso Defendants did not pay them the legally-required minimum wage, spread of hours pay, or time

and one-half for their overtime hours; unlawfully deducted monies from their tips and/or wages; misappropriated their tips; unlawfully charged them for their required uniforms and/or failed to reimburse them for the purchase of their required uniforms, and failed to compensate them for uniform maintenance; and failed to provide them legally required notices concerning the terms and conditions of their employment.

2.       In 2017, the Brioso Defendants were sued for many of the same violations addressed here. The lawsuit did not induce compliance with the law. Rather, in response to the lawsuit, defendant Pietro DiMaggio transferred his personal real estate interests to his wife in a bid to evade any judgment that might be entered against him, and the Brioso Defendants settled with the individual plaintiff while continuing to violate the law.

3.       When, a short time after the lawsuit settled, Plaintiff Marcelino Zapoteco complained to Pietro DiMaggio about ongoing tip theft, Pietro not only took no steps to address the theft, he retaliated against Zapoteco; and when Zapoteco subsequently filed a complaint with the Department of Labor ("DOL"), Pietro threatened Plaintiff Carlos Sebastian Sandobal and warned him not to cooperate with DOL investigators.

4.       Now, the Named Plaintiffs, on their own behalves and on behalf of all persons similarly situated, bring this action to redress the following violations of federal and New York law:

(a) the Brioso Defendants' failure to pay the Named Plaintiffs and other employees of the Brioso Defendants: (i) wages at not less than the applicable minimum wage rate(s) for work performed, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a)(1), New York Labor Law ("NYLL") § 652(1), and 12 NYCRR § 146-1.2; (ii) wages at not less than 1.5 times said employees' regular rate(s) of pay for work performed in each workweek in excess of

40 hours, in violation of 29 U.S.C. § 207(a)(1) and 12 NYCRR § 146-1.4, (iii) wages at the agreed-upon rates for the work the Named Plaintiffs performed for the Brioso Defendants, in violation of NYLL §§ 191 and 198(3) and New York contract law; (iv) one hour's pay at the applicable minimum hourly wage rate for each workday in which the spread of hours for work performed exceeded ten (10) hours, in violation of 12 NYCRR § 146-1.6, (v) reimbursements for required purchases of uniforms or parts thereof, and for expenses incurred in required maintenance of said uniforms or parts thereof, in violation of NYLL § 193(3)(a) and 12 NYCRR § 146-1.8, and (vi) uniform maintenance payments for the maintenance of uniforms or parts thereof, in violation of 12 NYCRR § 146-1.7;

(b) the Brioso Defendants' misappropriation of the tips of the Named Plaintiffs and other tipped employees, in violation of NYLL § 196-d and 12 NYCRR § 146-2.16;

(c) the Brioso Defendants' unlawful deductions from the wages of the Named Plaintiffs and other employees in violation of NYLL § 193 and 12 NYCRR § 146-2.7;

(d) the Brioso Defendants' failure to provide the Named Plaintiffs and other employees, at the time of hiring, in English and in the language identified by each employee as the primary language of such employee, with a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; and anything otherwise required by law, in violation of NYLL § 195(1) and 12 NYCRR § 146-2.2(a);

(e) the Brioso Defendants' failure to furnish to the Named Plaintiffs and other employees, with each payment of wages, a written statement listing the dates of each pay period corresponding to each such payment of wages; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked, in violation of NYLL § 195(3) and 12 NYCRR § 146-2.3;

(e) the retaliatory actions taken by Pietro DiMaggio and/or his agent against Plaintiffs Marcelino Zapoteco and Carlos Sebastian Sandobal, in violation of 29 U.S.C. § 215(a)(3) and NYLL § 215; and

(f) the fraudulent conveyances of various properties within the meaning of New York Debtor and Creditor Law ("DCL") §§ 273, 275, and 276 by defendants Pietro DiMaggio and Lisa DiMaggio (collectively, "the Conveyance Defendants").[1]

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction under 29 U.S.C. § 216(b) and under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

---

[1] The DCL was amended and reorganized effective April 4, 2020. However, the pre-amendment provisions of the DCL apply here because the transactions at issue took place prior to April 2020. *See* McKinney's 2019 Session Law News of NY Ch. 580 [A. 5622] § 7 ("This act shall take effect one hundred twenty days after it shall have become a law, and shall apply to a transfer made or obligation incurred on or after such effective date, but shall not apply to a transfer made or obligation incurred before such effective date, nor shall it apply to a right of action that has accrued before such effective date."); *see also Yuan Bo Lai v. Pu Ti Buddhist Ass'n*, 2020 NY Slip Op 31509(U), 2020 N.Y. Misc. LEXIS 2243, at *1 n.1 (N.Y. Sup. Ct., Kings Cnty. May 20, 2020).

6.     This Court has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are so closely related to their claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution. The Court has ancillary jurisdiction over Plaintiffs' New York Debtor and Creditor Law ("DCL") and CPLR claims because these proceedings are necessary to assist in the protection and enforcement of any eventual judgment against the Brioso Defendants.

7.     Upon information and belief, this Court has personal jurisdiction over each Defendant.

8.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### A.  Defendants

9.     Defendant Rapi, Inc. ("Rapi" or "the Corporate Defendant") is a New York business corporation with a principal place of business at 174 New Dorp Lane, Staten Island, New York 10306. Upon information and belief, Rapi does business under the name "Brioso Ristorante." Upon information and belief, Rapi is an employer of the Named Plaintiffs and the similarly situated employees within the meaning of the 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6). At all relevant times, Rapi was in the hospitality industry as defined by 12 NYCRR § 146-3.1(a).

10.     Upon information and belief, defendant Pietro DiMaggio ("Pietro") is a resident of New York, residing at 101 Iron Mine Drive, Staten Island, New York 10304. At all relevant times, Pietro was an employer of Plaintiffs and those similarly situated employees within the meaning of the 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6). Upon information and

5

belief, Pietro has, since 1997, been a co-owner of Rapi with his brother, defendant Raffaele

DiMaggio ("Raffaele"), and maintained operational control over the Corporate Defendant.

11.     Upon information and belief, defendant Raffaele DiMaggio is a resident of New

York, residing at 218 Swinnerton Street, Staten Island, New York 10307. Raffaele was an

employer of the Named Plaintiffs and the similarly situated employees within the meaning of the

29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6). Upon information and belief, Raffaele has,

since 1997, been a co-owner of Rapi with his brother Pietro, and maintained operational control

over the Corporate Defendant.

12.     At all relevant times, the Brioso Defendants operated Brioso, a restaurant within

the meaning of 12 NYCRR § 146-3.1(b) located at 174 New Dorp Lane, Staten Island, NY

10306.

13.     Upon information and belief, at all relevant times, the Brioso Defendants operated

an enterprise engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1). Upon

information and belief, Brioso had an annual gross volume of sales not less than $500,000. Upon

information and belief, the Brioso Defendants' employees engaged in commerce and in the

production of goods for commerce and handling, selling or otherwise working on goods or

materials that have been moved in or produced for commerce by any person. Specifically, Brioso

utilized a wide variety of materials, including foodstuffs, kitchen utensils, cooking vessels,

glasses and dishware, silverware, cleaning supplies, paper products, furniture, and more which,

upon information and belief, moved or were produced in interstate commerce.

14.     At all relevant times, Pietro and Raffaele had the power to and did personally hire

and fire employees (including the waiters, runners, bussers and kitchen staff), set their hours and

wages, determine methods of payment, direct and supervise their work, maintain their employment records, and otherwise control their terms and conditions of employment.

15.     Each Brioso Defendant has had substantial control of the working conditions of the Plaintiffs and those similarly situated employees, and over the unlawful policies and practices alleged herein.

16.     Upon information and belief, defendant Lisa DiMaggio ("Lisa") is a resident of New York, residing at 101 Iron Mine Drive, Staten Island, New York 10304, and is married to Pietro DiMaggio.

**B.  Named Plaintiffs**

17.     Plaintiff Marcelino Zapoteco ("Zapoteco") is a resident of New York who was employed within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by the Brioso Defendants from approximately March 2010 to April 2011 and January 2012 to February 2018. From approximately March 2010 to April 2011 and January 2012 to November 2012, Zapoteco worked as a busser. From November 2012 to approximately November 2016, Zapoteco worked as a food runner and busser. From approximately November 2016 to February 2018, Zapoteco worked as a waiter. At all relevant times, Zapoteco was an employee and food service worker within the meaning of 12 NYCRR §§ 146-3.2(a) and 146-3.4(a) who was employed by the Brioso Defendants in the hospitality industry as defined by 12 NYCRR § 146-3.1(a). At all relevant times, Zapoteco was an employee within the meaning of the FLSA and NYLL. At all relevant times, Zapoteco was engaged in commerce within the meaning of the FLSA.

18.     Plaintiff Jorge Rivas ("Rivas") is a resident of New Jersey who was employed within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by the Brioso Defendants as a waiter from approximately March 2012 until December 31, 2019. At all relevant times, Rivas was an

7

employee and food service worker within the meaning of 12 NYCRR §§ 146-3.2(a) and 146-3.4(a) who was employed by the Brioso Defendants in the hospitality industry as defined by 12 NYCRR § 146-3.1(a). At all relevant times, Rivas was an employee within the meaning of the FLSA and NYLL. At all relevant times, Rivas was engaged in commerce within the meaning of the FLSA.

19.    Plaintiff Auner Guardado Hernandez ("Guardado") is a resident of New York who was employed within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by the Brioso Defendants from approximately December 2014 until January 5, 2020. Guardado was employed as a busser from approximately December 2014 until approximately July 2016, as a busser and food runner from approximately July 2016 until May 2017, and then as a waiter from May 2017 until January 2020. At all relevant times, Guardado was an employee and food service worker within the meaning of 12 NYCRR §§ 146-3.2(a) and 146-3.4(a) who was employed by the Brioso Defendants in the hospitality industry as defined by 12 NYCRR § 146-3.1(a). At all relevant times, Guardado was an employee within the meaning of the FLSA and NYLL. At all relevant times, Guardado was engaged in commerce within the meaning of the FLSA.

20.    Plaintiff Carlos Sebastian Sandobal ("Sandobal") is a resident of New York who was employed within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by the Brioso Defendants from approximately March 2013 to December 12, 2019. From March to April 2013, he worked as a dishwasher. From April 2013 until approximately April 2015, he worked in the kitchen preparing salads. From around April 2015 to December 2019 he was a line cook. At all relevant times, Sandobal was an employee and food service worker within the meaning of 12 NYCRR §§ 146-3.2(a) and 146-3.4(a) who was employed by the Brioso Defendants in the hospitality industry as defined by 12 NYCRR § 146-3.1(a). At all relevant times, Sandobal was

an employee within the meaning of the FLSA and NYLL. At all relevant times, Sandobal was engaged in commerce within the meaning of the FLSA.

21.     Plaintiff Yani Macareno ("Macareno") is a resident of New York who was employed within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by the Brioso Defendants from April 2019 to September 2019 as a busser. In September 2019, he also worked as a food runner one day a week. At all relevant times, Macareno was an employee and food service worker within the meaning of 12 NYCRR §§ 146-3.2(a) and 146-3.4(a) who was employed by the Brioso Defendants in the hospitality industry as defined by 12 NYCRR § 146-3.1(a). At all relevant times, Macareno was an employee within the meaning of the FLSA and NYLL. At all relevant times, Macareno was engaged in commerce within the meaning of the FLSA.

22.     Plaintiff Fredy Rojas Perez ("Rojas") is a resident of New York who was employed within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by the Brioso Defendants from May 2019 to November 2019 as a busser. At all relevant times, Rojas was an employee and food service worker within the meaning of 12 NYCRR §§ 146-3.2(a) and 146-3.4(a) who was employed by the Brioso Defendants in the hospitality industry as defined by 12 NYCRR § 146-3.1(a). At all relevant times, Rojas was an employee within the meaning of the FLSA and NYLL. At all relevant times, Rojas was engaged in commerce within the meaning of the FLSA.

## FACTS

### A. The Brioso Defendants' Unlawful Misappropriation of Tips and Unlawful Deductions

23.     At all relevant times, the Brioso Defendants maintained a policy and practice of requiring tipped employees to share their tips with one another by placing all tips in a tip pool. Each waiter was to receive one share of the tips, runners were to receive 75% of what waiters received, and bussers were to receive 50% of what waiters received. At all relevant times, the

9

Brioso Defendants failed and refused to regularly make available to tipped employees information or records of tips collected.

24.     At all relevant times, Safet (also known as Sal) Velovic ("Velovic") was the manager at Brioso. Velovic also waited tables approximately four days a week.

25.     Velovic had the authority to and did hire, fire, and discipline employees of the Brioso Defendants, as well as set employees' schedules, and assign and oversee the performance of employees' work.

26.     Velovic was at all relevant times an employer or agent of the employer.

27.     On days when Velovic waited tables, he took a share of the tips from the tip pool. The Brioso Defendants knew or had reason to know of this practice.

28.     On days when he was not waiting tables, Velovic also frequently took a share of the tips from the tip pool. Additionally, Velovic regularly took money out of the tip box or pocketed tips intended for the tip pool. The Brioso Defendants knew or had reason to know of this practice.

29.     Pietro regularly took tips intended for the tip pool.

30.     Upon information and belief, when there were parties at Brioso, which occurred regularly, Pietro and Velovic deducted a share of the customer tips before distributing the remaining tips to the tipped employees.

31.     At all relevant times, the Brioso Defendants maintained a practice and policy of deducting 5% from all tips paid by credit card, although, upon information and belief, the credit card fees were less than 5%.

32.     At all relevant times, the Brioso Defendants maintained a practice and policy of taking money out of the tip pool any time the cash register was short at the end of the night.

10

33.     At all relevant times, the Brioso Defendants maintained a practice and policy of withholding from the tip pool any tips left by customers using gift cards.

34.     At all relevant times, the Brioso Defendants maintained a practice and policy of deducting from the tips or wages of waitstaff (waiters, bussers, and runners) or charging waitstaff the menu price of any food or drink item sent back to the kitchen by a customer.

35.     At all relevant times, the Brioso Defendants maintained a practice and policy of deducting from the tips or wages of waitstaff or charging waitstaff the menu price of any food or drink item comped to a customer due to a customer complaint (regarding the speed of service, the quality of the food, or for any other reason).

36.     At all relevant times, the Brioso Defendants maintained a practice and policy of deducting from the tips or wages of waitstaff or charging waitstaff the menu price of any food or drink item mistakenly omitted from a customer's bill.

37.     At all relevant times, the Brioso Defendants maintained a practice and policy of deducting from the tips or wages of employees or charging employees for any glass or dish that broke in the course of their work.

**B.  The Brioso Defendants' Unlawful Imposition of Uniform Expenses on Employees**

38.     At all relevant times, the Brioso Defendants required all waitstaff to wear a uniform consisting of a tie of a specific style and color provided by the Brioso Defendants, an apron with the Brioso logo on it, a button-up shirt, black dress pants, and black shoes.

39.     The Brioso Defendants required the waitstaff to purchase the apron from them for $20. The waitstaff were also required to purchase the tie from the Brioso Defendants for $20 or to purchase the same tie elsewhere. Due to wear and tear and the requirement that they always wear a clean apron and tie, waitstaff had to purchase ties and aprons on multiple occasions

11

throughout their employment. The Brioso Defendants did not reimburse Plaintiffs for any of these purchases.

40.     The Brioso Defendants required waitstaff to maintain the ties and aprons they were required to wear to work. When their ties were soiled, the waitstaff were required to either dry clean them at their own expense or purchase new ties for $20 each from the Brioso Defendants. Plaintiffs normally washed and dried their aprons and ties at a laundromat or dry cleaner. Plaintiffs were also required to iron their aprons, shirts, and pants.

41.     Plaintiffs, while employed by the Brioso Defendants, were forced to incur out-of-pocket expenses in order to maintain their uniforms. These expenses included the cost of dry cleaning their ties (and for some Plaintiffs, aprons), the purchase of detergent for washing their aprons, the use of washing machines and dryers to wash their aprons, and the cost of transportation to and from the laundromat and dry cleaner. The Brioso Defendants did not reimburse nor otherwise pay Plaintiffs for these expenses. The Brioso Defendants also did not pay Plaintiffs uniform maintenance pay.

**C.  The Brioso Defendants' Compensation Policies and Practices**

42.     Prior to approximately March 2018, the Brioso Defendants maintained a policy and practice of not paying waiters any wages at all; waiters' only compensation came from customer tips. At all relevant times from approximately March 2018 to present, the Brioso Defendants maintained a policy and practice of paying waiters a flat rate by shift (except on Sundays, when they were paid a flat rate for the day), regardless of the number of hours they actually worked. The Brioso Defendants orally agreed to pay waiters this rate.

43.     At all relevant times, the Brioso Defendants maintained a policy and practice of paying bussers and runners a flat rate by shift (except on Sundays, when they were paid a flat

rate for the day), regardless of the number of hours they actually worked. The Brioso Defendants orally agreed to pay bussers and runners this rate.

44.     At all relevant times, the Brioso Defendants maintained a policy and practice of paying dishwashers, line cooks, and salad preppers a flat rate by week. The Brioso Defendants orally agreed to pay dishwashers, line cooks, and salad preppers these rates.

45.     At all relevant times, the Brioso Defendants maintained a policy and practice of failing to pay employees one-and-one half times their regular rate of pay for all hours they worked in any workweek exceeding forty hours per week.

46.     At all relevant times, the Brioso Defendants maintained a policy and practice of failing to pay employees at or above the required minimum wage rate for all hours they worked.

47.     At all relevant times, the Brioso Defendants maintained a policy and practice of failing to pay employees "spread of hours" compensation for all days on which their spread of hours exceeded ten (10).

48.     At all relevant times, the Brioso Defendants maintained a policy and practice of failing to provide employees with wage notices that complied with NYLL § 195(1) and 12 NYCRR § 146-2.2.

49.     At all relevant times, the Brioso Defendants maintained a policy and practice of failing to provide employees with accurate wage statements that complied with NYLL § 195(3) and 12 NYCRR § 146-2.3

50.     The Brioso Defendants failed to post and keep posted a notice explaining the Fair Labor Standards Act in a conspicuous place to permit employees to observe readily a copy, as required by 29 C.F.R. § 516.4.

51.     Upon information and belief, the Brioso Defendants failed to make and maintain accurate records of the hours worked each day and total hours worked each workweek by employees, the regular hourly pay rate of employees and the basis thereof, the daily or weekly straight-time earnings of employees, employees' overtime rate of pay, employees' total overtime earnings for the workweek, deductions from employees' wages, and the total wages paid each pay period to employees, as required by 29 C.F.R. § 516.2.

**D.  The Named Plaintiffs' Hours and Wages**

*Marcelino Zapoteco*

52.     From approximately March 2010 to April 2011 and approximately January 2012 through October 2012 when Zapoteco worked as a busser, the Brioso Defendants paid him $10 per lunch shift and $10 per dinner shift (except on Sundays, when he was paid $10 for the day), for an average of approximately $110 per week. During this period, he regularly worked six days per week, for an average of approximately 75 hours per week. His spread of hours was more than 10 hours most or all work days.

53.     From approximately November 2012 through October 2016 when he worked as a busser and food runner, the Brioso Defendants continued to pay Zapoteco $10 per lunch shift and $10 per dinner shift (except on Sundays, when he was paid $10 for the day), for an average of approximately $110 per week. During this period, Zapoteco continued to work six days per week, for an average of approximately 75 hours per week. His spread of hours was more than 10 hours most or all work days.

54.     From approximately November 2016 until February 2018 when he worked as a waiter, the Brioso Defendants did not pay Zapoteco any wages at all; his only earnings were tips from customers. During this period, Zapoteco regularly worked five or six days per week

14

(alternating five days one week and six the next), for an average of approximately 63 or 75 hours per week (depending on whether he worked five or six days). His spread of hours was more than 10 hours most or all work days.

55.     Zapoteco was typically compensated in cash, but sometimes was paid by check when the Brioso Defendants did not have cash with which to pay him.

*Jorge Rivas*

56.     From March 2012 when Rivas started as a waiter to approximately March 2018, the Brioso Defendants paid him no wages at all; his only earnings were tips from customers. Although Rivas's hours varied, from March 2012 through approximately August 2013, he regularly worked five days per week, for an average of approximately 43 hours per week. During this period, Rivas's spread of hours was more than 10 hours approximately one day per week. From approximately September 2013 through February 2018, Rivas regularly worked six days per week, for an average of approximately 73 hours per week. During this period, his spread of hours was more than 10 hours most or all work days.

57.     From approximately March 2018 through March 2019, the Brioso Defendants paid Rivas $25 per lunch shift and $25 per dinner shift (except they paid him $25 for the day on Sundays), for an average of approximately $175 per week. During this period, Rivas regularly worked five days a week, for an average of approximately 51 hours per week. However, approximately once per month, he worked a morning party on Saturday; during those weeks, Rivas worked an average of approximately 56 hours per week. Rivas's spread of hours was more than 10 hours approximately three days per week (four when there were Saturday morning parties).

58.     From approximately April 2019 through December 2019, the Brioso Defendants paid Rivas $25 per lunch shift and $50 per dinner shift (except they paid him $50 for the day on Sundays), for an average of approximately $250 per week. During this period, Rivas regularly worked four days per week, for an average of approximately 43.5 hours per week. Rivas's spread of hours was more than 10 approximately three days per week.

59.     Rivas was compensated in cash until 2017 and through a combination of cash and checks from 2017 through December 2019.

***Auner Guardado Hernandez***

60.     From December 2014 through approximately April 2017, when Guardado worked as a busser and then a busser on weekdays and food runner on weekends, the Brioso Defendants paid him $10 per lunch shift and $10 per dinner shift (except on Sundays, when they paid him $10 for the day), for an average of approximately $50-$60 per week ($70 during the summers). During this time period, Guardado regularly worked five days per week, for an average of approximately 46 hours per week (51 hours per week in the summers). His spread of hours was more than 10 hours approximately one to two days per week (two to three days per week in the summers).

61.     From approximately May 2017 through February 2018, when he worked as a waiter, the Brioso Defendants did not pay Guardado any wages at all; his only earnings were tips from customers. During this time period, Guardado regularly worked six days per week, for an average of approximately 53.5 hours per week. His spread of hours was more than 10 hours approximately two days per week.

62.     From approximately March 2018 through March 2019, when he worked as a waiter, the Brioso Defendants paid Guardado $25 per lunch shift and $25 per dinner shift (except

on Sundays, when they paid him $25 for the day), for an average of approximately $175 per week. During this time period, Guardado regularly worked five days per week, for an average of approximately 43.5 hours per week. His spread of hours was more than 10 hours approximately one day per week.

63.     From approximately April 2019 to January 5, 2020, the Brioso Defendants paid Guardado $25 per lunch shift and $50 per dinner shift (except on Sundays, when they paid him $50 for the day), for an average of approximately $250 per week. During this period, Guardado regularly worked five days a week for an average of approximately 43.5 hours per week. His spread of hours was more than 10 hours approximately one day per week.

64.     Guardado was compensated in cash until 2017 and through a combination of cash and checks from 2017 through January 2020.

*Carlos Sebastian Sandobal*

65.     During Sandobal's first week of work, which the Brioso Defendants called training, the Brioso Defendants did not pay Sandobal any wages.

66.     Thereafter, from March 2013 until approximately April 2013, when Sandobal worked as a dishwasher, the Brioso Defendants paid him $425 per week. During this period, Sandobal regularly worked six days per week, for an average of approximately 67 hours per week. His spread of hours was more than 10 hours approximately five days per week.

67.     From approximately April 2013 through March 2015 when he worked in the kitchen preparing salads, the Brioso Defendants paid Sandobal $475 per week. During this period, he regularly worked six days per week, for an average of approximately 67 hours per week. His spread of hours was more than 10 hours approximately five days per week.

68.     From approximately April 2015 through August 2016, when he worked as a line
cook, the Brioso Defendants paid Sandobal $750 per week for six days of work and
approximately $900 for weeks he worked seven days per week. During this period, he regularly
worked six days per week, for an average of approximately 67 hours per week, but he worked
seven days per week, for an average of approximately 78 hours per week when other cooks were
on vacation (which occurred for approximately three weeks each year). His spread of hours was
more than 10 hours approximately five days per week when he worked six days per week. His
spread of hours was more than 10 hours approximately six days per week when he worked seven
days per week.

69.     From approximately September through October 2016, when Sandobal worked as
a line cook, the Brioso Defendants paid him approximately $900 per week. During this period,
Sandobal regularly worked seven days per week, for an average of approximately 78 hours per
week. His spread of hours was more than 10 hours approximately six days per week.

70.     From approximately November 2016 through May 2018, when he worked as a
line cook, the Brioso Defendants paid Sandobal $750 per week. During this period, he regularly
worked six days per week, for an average of approximately 67 hours per week. However, when
other cooks were on vacation, which occurred for approximately three weeks each year, he
worked seven days per week, for an average of approximately 78 hours per week, for which he
was paid approximately $900. His spread of hours was more than 10 hours approximately five
days per week when he worked six days per week. His spread of hours was more than 10 hours
approximately six days per week when he worked seven days per week.

71.     From approximately June 2018 to December 2018, when he worked as a line
cook, the Brioso Defendants paid Sandobal $975 per week. During this period, he regularly

18

worked six days per week, for an average of approximately 67 hours per week. His spread of hours was more than 10 hours approximately five days per week.

72.     From approximately January 2019 to December 2019, when he worked as a line cook, the Brioso Defendants paid Sandobal $815 per week. During this period, Sandobal regularly worked five days per week, for an average of approximately 56 hours per week, with a spread of hours of more than 10 hours approximately four days per week. However, approximately once or twice each month, he worked six or seven days per week. When he worked six days, he worked an average of approximately 67 hours per week, and was paid $975 for the week. When he worked seven days, he worked an average of approximately 78 hours per week, and was paid approximately $1,150 for the week. His spread of hours was more than 10 hours approximately five days per week when he worked six days per week. His spread of hours was more than 10 hours approximately six days per week when he worked seven days per week.

73.     When there was a party at Brioso, which occurred two to three times per week throughout Sandobal's employment, usually on Fridays or Saturdays, the Brioso Defendants required Sandobal and the other kitchen staff to arrive an hour or an hour and a half early, but they were not paid extra for the extra time they worked.

74.     Sandobal was compensated only in cash until 2017 and through a combination of cash and checks from 2017 through December 2019.

***Yani Macareno***

75.     The Brioso Defendants did not pay Macareno for his first day of work, which they described as "training."

76.     For the rest of Macareno's employment (April 2019 to September 2019), the Brioso Defendants typically paid him $25 per lunch shift and $50 per dinner shift (except on at

least 4 Saturdays when he was not paid for the lunch shift he worked and on Sundays when he was paid $50 for the day), for an average of approximately $325 per week. Macareno regularly worked six days per week, for an average of approximately 59 hours per week. His spread of hours was greater than 10 hours approximately three days per week.

77.     Macareno was compensated through a combination of cash and checks.

*Fredy Rojas Perez*

78.     Throughout Rojas's employment (May 2019 through November 2019), the Brioso Defendants paid him $50 per dinner shift (except on Sunday, he was paid $50 for the whole day), for an average of approximately $250 per week. Rojas regularly worked five days per week, for an average of approximately 43.5 hours per week. His spread of hours was greater than 10 hours approximately one day per week.

79.     Rojas was compensated through a combination of cash and checks.

**E.  Pietro DiMaggio's Retaliation Against Plaintiffs Marcelino Zapoteco and Carlos Sebastian Sandobal**

80.     In February 2018, Zapoteco witnessed Velovic take tip money off of a table and put it in his pocket.

81.     Zapoteco complained to Pietro that Velovic was stealing tips that belonged to the waitstaff.

82.     Pietro responded to Zapoteco's complaint by roughly grabbing his arm, screaming and cursing at him, and angrily pounding on and punching the table.

83.     Pietro's conduct caused Zapoteco to become fearful for his safety.

84.     Shortly thereafter, Pietro held a meeting that he required all of the workers to attend. During the meeting, Pietro and Velovic berated Zapoteco for complaining about Velovic's tip theft. Pietro screamed and cursed at the workers and told them that they better

"watch out" and that he would "fucking bury" them, causing Zapoteco to once again fear for his safety.

85.     A few days later, Velovic began to follow Zapoteco around, target him, and aggressively yell at him. Because Zapoteco had complained to Pietro about Velovic's tip theft, Velovic demanded that Zapoteco clean the floors, chairs, windows, walls, doors, and bathrooms and take out the trash, even though those tasks were not part of his duties as a waiter and he had never been asked to perform them before. When Zapoteco protested that those were not his job duties, Velovic demanded he do them anyway.

86.     At the end of the lunch shift, Zapoteco, left the restaurant and did not return.

87.     Zapoteco was forced to leave his job because his working environment had become intolerable due to his complaint.

88.     Thereafter, Zapoteco filed a complaint with the New York State Department of Labor ("DOL").

89.     When Pietro learned that Zapoteco had filed a complaint with the DOL, he was furious. He went into the kitchen, where Sandobal was working, and began screaming and cursing at Sandobal.

90.     Upon information and belief, Pietro believed that Sandobal was participating in the DOL investigation, providing information to the DOL, and/or testifying in a DOL proceeding, or that he would shortly engage in one or more of these activities.

91.     During the course of Pietro's diatribe to Sandobal in the kitchen, he made numerous threats to Sandobal, including telling Sandobal that if Sandobal talked to the DOL, Pietro would "call immigration to [Sandobal's] house."

92.     Pietro's threats caused Sandobal great distress.

93.    Sandobal subsequently participated in the DOL investigation.

**F. The Conveyance Defendants' Fraudulent Conveyances**

94.    On June 30, 2017, Arben Krasniqi, a former employee of the Brioso Defendants, filed a lawsuit on his own behalf and on behalf of those similarly situated, alleging that the Brioso Defendants had violated various provisions of the FLSA and NYLL. *See Krasniqi v. Rapi Inc.*, No. 1:17-cv-3945 (E.D.N.Y.).

95.    Specifically, the lawsuit alleged that the Brioso Defendants had:

   a.    failed to keep accurate records of hours worked by the FLSA Collective as required by the FLSA and the NYLL;

   b.    failed to pay the FLSA Collective minimum wages for all hours worked;

   c.    failed to pay the FLSA Collective overtime pay for all hours worked over forty;

   d.    deprived the FLSA Collective of tips that they had earned;

   e.    failed to pay the FLSA Collective spread-of-hours compensation for each day in which their workdays spanned more than ten hours;

   f.    failed to provide the FLSA Collective with accurate wage statements at the end of each pay period; and

   g.    failed to provide the FLSA Collective with wage notices at the time of hiring.

96.    The complaint defined the collective to include all "similarly situated waiters, bussers, runners, and bartenders . . . who are current and former employees of Defendants since the date three years prior to the filing of this action who elect to opt-in to this action." The complaint noted that this collective consisted of "approximately sixty" individuals.

22

97.    Pietro DiMaggio was served with the summons and complaint on July 14, 2017.

Three and a half months later, he transferred his interest in two properties to his wife, Lisa

DiMaggio, for no consideration, with intent to frustrate the enforcement of any judgment that

might be rendered in favor of the FLSA Collective.

98.    Those properties were:

 a. 101 Iron Mine Drive, Staten Island, New York ("Iron Mine Drive"):

  i. On December 11, 2006, Pietro DiMaggio and Lisa DiMaggio, as husband and wife, purchased Iron Mine Drive, a one-family residential, for $1,300,000.

  ii. Pietro and Lisa took out two mortgages for this Property on December 11, 2006 — in the amount of $340,000 and $700,000. The mortgage in the amount of $340,000 was satisfied on November 23, 2016. The mortgage in the amount of $700,000 was consolidated, extended, and modified on December 6, 2012, at which time the total unpaid principal was $655,150. Another mortgage was taken out on the property on November 9, 2016 in the amount of $257,000, at which time the remaining unpaid principal on the $700,000 mortgage was $569,249. Upon information and belief, the total loan principal remaining on the property as of November 2016 was approximately $826,250.

  iii. On October 30, 2017, Pietro and Lisa transferred Iron Mine Drive to Lisa "in consideration of Ten Dollars" and for a sale price of "0."

23

      iv.       Upon information and belief, Pietro and Lisa reside together at Iron Mine Drive.

   b.     581 Lamoka Avenue, Staten Island, New York ("Lamoka Ave."):

     i.       On October 30, 1990, Pietro DiMaggio and non-party Kathleen Maguire ("Maguire"), as joint tenants with rights of survivorship, purchased Lamoka Ave. The deed does not specify the purchase price of the property.

     ii.      Pietro and Maguire took out one mortgage on the property on October 30, 1990 in the amount of $185,000 and a second mortgage on February 12, 1991 in the amount of $25,019.85. Both mortgages (and several subsequent consolidations, modifications and extensions of the $185,000 mortgage) have been satisfied.

     iii.    On November 28, 1993, Pietro and Maguire transferred Lamoka Ave. to Pietro. The deed does not specify the purchase price.

     iv.    On December 1, 2003, Pietro took out another mortgage on the property, for a home equity line of credit in an amount up to $250,000. No satisfaction of this mortgage has been recorded.

     v.     On October 30, 2017, Pietro transferred Lamoka Ave., a 2 or 3 family residential property, to Lisa DiMaggio "in consideration of Ten Dollars" and for a sale price of "0."

99.    On information and belief, Pietro does not hold an interest in other real property.

100.   On January 12, 2018, Mr. Krasniqi and the Brioso Defendants jointly filed a letter-motion to the court [Doc. # 22] seeking approval of a settlement agreement. The letter-

motion outlined three possible damages scenarios, with damages ranging from $113,560.74 to $140,717.27 (excluding attorney's fees and costs) for Mr. Krasniqi alone, were he to prevail in the case.

101.    Were the potential opt-in plaintiffs to prevail, with approximately 16 employees employed by the Brioso Defendants at any one time, and assuming attorney's fees of approximately 33% of the total damages amount, the Brioso Defendants would have been facing damages of approximately three million dollars.

102.    Upon information and belief, these damage numbers far exceeded the saleable value of Pietro's assets after he transferred Iron Mine Drive and Lamoka Ave. to his wife for no consideration.

## COLLECTIVE ACTION ALLEGATIONS

103.    The Named Plaintiffs bring the First and Third Causes of Action as a collective action pursuant to 29 U.S.C. § 216(b), on their own behalves and on behalf of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York, on or after the date that is three years before the filing of this action and who elect to opt in to this action ("the FLSA Collective").

104.    At all relevant times, the FLSA Collective is and has been similarly situated, has had substantially similar job requirements and pay provisions, and is and has been subject to the Brioso Defendants' decision, policy, plan and common policies, practices, and rules willfully failing and refusing to pay the FLSA Collective at the legally required minimum wage for all hours worked and one and one half times the regular rate for hours worked in excess of forty hours per workweek, retaining and permitting managers to retain the tips of waiters, bussers, and food runners, and failing to notify tipped workers in advance of the Brioso Defendants' use of the tip credit provisions of 29 U.S.C. § 203.

105.    The First and Third Causes of Action are properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective is readily ascertainable. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Brioso Defendants' records.

## CLASS ACTION ALLEGATIONS

106.    The Named Plaintiffs bring the Second and Fourth through Twelfth Causes of Action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on their own behalves and on behalf of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York on or after the date that is six years before the filing of this action ("the Class").

107.    Pursuant to FRCP 34(c)(5), the Class includes the following Subclasses:

a.    Subclass No. 1 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York who were paid in one or more workweeks less than the applicable minimum wage rate(s) set forth in NYLL § 652(1) for work for the Brioso Defendants;

b.    Subclass No. 2 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York whose work for the Brioso Defendants occupied more than forty (40) hours in one or more workweeks and who were not compensated for work they performed in excess of forty (40) hours in a workweek at 1.5 times their respective regular rates of pay;

c.    Subclass No. 3 consists of all tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York some of whose tips were retained by the Brioso Defendants and/or their agents in one or more workweeks;

d.      Subclass No. 4 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York from whose wages the Brioso Defendants deducted monies for spoilage and/or breakage and/or mistakes in orders and/or meals comped to customers in one or more workweeks or whom the Brioso Defendants charged for spoilage and/or breakage and/or mistakes in orders and/or meals comped to customers in one or more workweeks;

e.      Subclass No. 5 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York who were required to work one or more workdays in which the spread of hours exceeded ten (10) hours;

f.      Subclass No. 6 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York who were required to expend personal monies to purchase their uniforms or parts thereof;

g.      Subclass No. 7 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York who were required to expend personal monies to maintain their uniforms or parts thereof;

h.      Subclass No. 8 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York who were not provided, at the time of hiring, in English and in the language identified by each employee as the primary language of such employee, with a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; and the telephone number of the employer; and

       i.     Subclass No. 9 consists of all tipped and non-tipped hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York who were not provided with every payment of wages a wage statement that included: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

108.    The number and identity of the Class members are determinable from the records of the Brioso Defendants. The hours assigned and worked, the positions held, and the rates of pay of each Class member are also determinable from the Brioso Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Brioso Defendants.

109.    The proposed Class, and each Subclass thereof, are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Upon information and belief, there are at least sixty (60) members in the Class and in each Subclass thereof.

110.    There are questions of fact and of law that are common to the Class and to each Subclass thereof. Those questions predominate over any questions that may affect only individual members of the Class or any Subclass thereof. Such questions include but are not limited to:

a. Were hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York compensated for work they performed at not less than the applicable minimum wage rates established by NYLL § 652(1)?

b. Were the Brioso Defendants entitled to avail themselves of the tipped minimum wage rate under 12 NYCRR § 146-1.3? Did the Brioso Defendants and/or their agents receive and permit other individuals who were not food service workers to receive distributions from the tip pool? Did the Brioso Defendants fail to notify tipped employees of the tip credit? Did the Brioso Defendants permit tipped employees to handle the tip-sharing transactions themselves? Did the Brioso Defendants fail to maintain, preserve, and/or regularly make available to tipped employees records concerning the tips shared and/or pooled by employees?

c. Did NYLL § 652(1) require that the expenses that the Brioso Defendants required hourly employees employed by them to incur be taken into account when determining whether they were compensated at not less than the applicable minimum wage rates established by § 652(1)?

d. Did hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York perform work in excess of forty (40) hours in one or more workweeks?

e. Were hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York compensated for work they performed in excess of forty (40) hours in a workweek at 1.5 times their respective regular rates of pay?

f. Did the Brioso Defendants and/or their agents retain and/or misappropriate or suffer or permit others who were not food service workers to retain and/or misappropriate the tips of tipped hourly employees employed by them at Brioso Ristorante in Staten Island, New

York in one or more workweeks? Did such conduct violate NYLL § 196-d and 12 NYCRR § 146-2.16?

        g.    Did the Brioso Defendants charge or deduct monies from the wages of hourly employees employed by them at Brioso Ristorante in Staten Island, New York for spoilage and/or breakage and/or mistakes in orders and/or meals comped to customers in one or more workweeks? Did such conduct violate NYLL §§ 193(1), (3) and 12 NYCRR § 146-2.7?

        h.    Did the spread of hours in days worked by hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York exceed ten (10) hours in one or more workdays? Where the spread of hours in days worked by hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York exceeded ten (10) hours, were they entitled to be paid for such spread of hours pursuant to 12 NYCRR § 146-1.6? Where the spread of hours in days worked by hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York exceeded ten (10) hours, were they paid in accordance with 12 NYCRR § 146-1.6?

        i.    Were hourly employees employed by the Brioso Defendants at Brioso Ristorante in Staten Island, New York required by the Brioso Defendants to expend personal monies to purchase and/or maintain uniforms or parts thereof? Did the Brioso Defendants fail to reimburse or otherwise pay employees for such expenses? Did such conduct violate NYLL § 193(3)(a) and 12 NYCRR § 146-1.8? Did the Brioso Defendants fail to pay such employees uniform maintenance pay in the applicable amount according to 12 NYCRR § 146-1.7? Did such conduct violate 12 NYCRR § 146-1.7?

        j.    Did the Brioso Defendants fail to provide hourly employees employed by them at Brioso Ristorante in Staten Island, New York, at the time of their respective hirings, in

English and in the language identified by each employee as the primary language of such employee, with a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; and the telephone number of the employer?; and

> k.    Did the Brioso Defendants fail to provide hourly employees employed by them at Brioso Ristorante in Staten Island, New York, with every payment of wages a wage statement that included: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked?

111.    The Named Plaintiffs' claims are typical of those claims of the other members of the Class and of each Subclass thereof. The Named Plaintiffs and the other members of the Class and of each Subclass thereof were subject to the same relevant policies and practices of the Brioso Defendants and suffered the same kinds of injuries as a consequence of these policies and practices.

112.    The Named Plaintiffs will fairly and adequately protect the interests of the members of the Class and each Subclass thereof they seek to represent. There are no conflicts between Plaintiffs any the other members of the Class or any Subclass thereof. Counsel for the Named Plaintiffs are experienced in litigating and settling wage and hour claims under federal

and New York law and in litigating and settling class and collective actions, including those involving wage and hour claims.

113.    A class action is superior to other available methods for the fair and efficient adjudication of the claims herein. The individual Named Plaintiffs and the other putative members of the Class and of each Subclass thereof lack the financial resources necessary to adequately prosecute separate individual lawsuits against the Brioso Defendants. The prospective damages for each individual Named Plaintiff and each other member of the Class or any Subclass thereof are small in comparison to the expenses and burdens of an individual prosecution of the claims herein. A class action will avoid duplicative litigation and the possibility of inconsistent judgments concerning the relevant policies and practices of the Brioso Defendants.

**FIRST CAUSE OF ACTION**
**(FLSA Minimum Wage, 29 U.S.C. § 206(a)(1))**

114.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

115.    At all relevant times, the Named Plaintiffs and those similarly situated were employees of the Brioso Defendants within the meaning of the FLSA and were engaged in interstate commerce as defined by 29 U.S.C. §§ 206(a) and 207(a).

116.    At all relevant times, the Brioso Defendants were required by 29 U.S.C. § 206 to pay wages to the Named Plaintiffs and those similarly situated for work performed by them at a rate not less than $7.25 per hour.

117.    At all relevant times, the Brioso Defendants were not eligible to avail themselves of the tipped minimum wage rate under 29 U.S.C. § 203(m) and 29 C.F.R. § 531.50 *et seq.* because: the Brioso Defendants did not permit the Named Plaintiffs and those similarly situated

32

to retain all tips they received, in violation of 29 U.S.C. § 203(m); and the Brioso Defendants failed to notify the Named Plaintiffs and those similarly situated in advance of their use of the tip credit of the provisions of 29 U.S.C. § 203, in violation of 29 C.F.R. § 531.59.

118.    The Brioso Defendants knowingly and willfully failed to pay the Named Plaintiffs and those similarly situated the minimum hourly wage required by 29 U.S.C. § 206.

119.    The Brioso Defendants' minimum wage violations were compounded by their policy and practice of deducting money from the wages of and/or charging the Named Plaintiffs and those similarly situated for mistakes in orders, meals comped to customers, breakage of dishware, and the purchase of uniforms; and failing to reimburse or otherwise compensate the Named Plaintiffs and those similarly situated for the out-of-pocket expenditures they forced the Named Plaintiffs and those similarly situated to make to purchase and maintain their uniforms, all of which brought the wages of the Named Plaintiffs and those similarly situated even further below the minimum hourly wage required by 29 U.S.C. § 206.

**SECOND CAUSE OF ACTION**
**(New York Minimum Wage, NYLL § 652(1) and 12 NYCRR § 146-1.2)**

120.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

121.    At all relevant times, Plaintiffs were employees of the Brioso Defendants within the meaning of NYLL § 651(5).

122.    At all relevant times, the Brioso Defendants employed eleven or more employees.

123.    At all relevant times, the Brioso Defendants were required pursuant to NYLL § 652 to compensate Plaintiffs at not less than the applicable minimum wage rate(s) established by § 652(1) for each hour worked.

124.    Under NYLL § 652(1) and 12 NYCRR § 146-1.2, the minimum hourly rate applicable to Plaintiffs was:

$7.25 on and after July 24, 2009,

$8.00 on and after December 31, 2013,

$8.75 on and after December 31, 2014,

$9.00 on and after December 31, 2015,

$11.00 on and after December 31, 2016,

$13.00 on and after December 31, 2017, and

$15.00 on and after December 31, 2018.

125.    At all relevant times, the Brioso Defendants were not eligible to avail themselves of the tipped minimum wage rate under 12 NYCRR § 146-1.3 because: the Brioso Defendants and their agents received and permitted other individuals who were not food service workers to receive distributions from the tip pool, in violation of 12 NYCRR § 146-2.16; the Brioso Defendants failed to notify Plaintiffs of the tip credit, in violation of 12 NYCRR §§ 146-1.3, 146-2.2; the Brioso Defendants failed to permit Plaintiffs to handle the tip-sharing transactions themselves, in violation of 12 NYCRR § 146-2.15; and the Brioso Defendants failed to maintain, preserve, and regularly make available to Plaintiffs records concerning the tips shared and/or pooled by employees, in violation of 12 NYCRR § 146-2.17.

126.    At all relevant times, the Brioso Defendants knowingly and willfully failed to pay Plaintiffs the lawful minimum hourly wage required by NYLL § 652(1) and 12 NYCRR § 146-1.2.

127.    The Brioso Defendants' minimum wage violations were compounded by their policy and practice of deducting money from Plaintiffs' wages and/or charging Plaintiffs for

mistakes in orders, meals comped to customers, breakage of dishware, and the purchase of uniforms; and failing to reimburse or otherwise compensate Plaintiffs for the out-of-pocket expenditures they required Plaintiffs to make to purchase and maintain their uniforms, all of which brought Plaintiffs' wages even further below the minimum hourly wage required by NYLL § 652(1) and 12 NYCRR § 146-1.2.

## THIRD CAUSE OF ACTION
### (FLSA Overtime, 29 U.S.C. § 207(a)(1))

128.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

129.    At all relevant times, the Named Plaintiffs and those similarly situated regularly worked in excess of forty hours per workweek.

130.    At all relevant times, the Brioso Defendants have operated under a decision, policy, and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Named Plaintiffs and others similarly situated at a rate of at least one and one-half times the regular rate for all hours worked in excess of forty hours per workweek in violation of 29 U.S.C. § 207(a)(1).

131.    At all relevant times, the Brioso Defendants willfully, knowingly, and regularly failed to pay the Named Plaintiffs and others similarly situated at a rate of at least one and one-half times the regular rate for all hours worked in excess of forty hours per workweek in violation of 29 U.S.C. § 207(a)(1).

## FOURTH CAUSE OF ACTION
### (New York Overtime, 12 NYCRR § 146-1.4)

132.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

133.    At all relevant times, the Brioso Defendants knowingly and willfully failed to pay Plaintiffs the lawful overtime wages, in violation of 12 NYCRR § 146-1.4.

## FIFTH CAUSE OF ACTION
### (Misappropriation of Tips, NYLL § 196-d and 12 NYCRR § 146-2.16)

134.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

135.    The Brioso Defendants and/or their agents unlawfully retained and/or misappropriated or suffered or permitted others who were not food service workers to retain and/or misappropriate tips earned by Plaintiffs, in violation of NYLL § 196-d and 12 NYCRR § 146-2.16.

## SIXTH CAUSE OF ACTION
### (Unlawful Deductions, NYLL § 193 and 12 NYCRR § 146-2.7)

136.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

137.    The Brioso Defendants unlawfully deducted from the wages of Plaintiffs or charged Plaintiffs amounts for spoilage and/or breakage and/or mistakes in orders and/or meals comped to customers, in violation of NYLL § 193 and 12 NYCRR § 146-2.7.

## SEVENTH CAUSE OF ACTION
### (Spread of Hours, 12 NYCRR § 146-1.6)

138.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

139.    Plaintiffs regularly worked more than ten hours in a workday.

140.    The Brioso Defendants willfully violated the rights of Plaintiffs by failing to pay Plaintiffs an additional one hour's pay at the basic New York minimum hourly wage rate on the

days in which the length of their workday was more than ten hours, in violation of 12 NYCRR § 146-1.6.

## EIGHTH CAUSE OF ACTION
### (Unpaid Wages, NYLL §§ 191 and 198(3) and NY Contract Law)

141.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

142.    Pursuant to NYLL §§ 191 and 198(3) and New York contract law, an employer is required to compensate his/her/its employees for each hour of work performed by them for the employer's benefit at the wage rate agreed upon by the employer and employee for performance of that work.

143.    The Brioso Defendants and each Plaintiff agreed that each Plaintiff would be compensated for all work they performed at an agreed-upon rate. The agreed-upon rate increased over time.

144.    The Brioso Defendants failed to compensate each Plaintiff employed by them at the agreed upon rate, in violation of NYLL §§ 191 and 198(3) and New York contract law, because the Brioso Defendants: withheld Plaintiffs' tips or permitted ineligible employees to share in Plaintiffs' tips; deducted money from Plaintiffs' tips and/or wages for mistakes in orders, breakage of dishware, and the purchase of uniforms; and failed to reimburse or otherwise compensate Plaintiffs for the out-of-pocket expenditures they forced Plaintiffs' to make to purchase and maintain their uniforms.

## NINTH CAUSE OF ACTION
### (Uniform Maintenance Pay, 12 NYCRR § 146-1.7)

145.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

146.     At all relevant times, the Brioso Defendants required Plaintiffs to wear clean uniforms.

147.     At all relevant times, the Brioso Defendants required Plaintiffs to maintain their own uniforms and to expend their own monies on the maintenance of their uniforms. At all relevant times, the Brioso Defendants failed to reimburse Plaintiffs for such expenses.

148.     At all relevant times, the Brioso Defendants failed to pay Plaintiffs uniform maintenance pay in the applicable amount according to 12 NYCRR § 146-1.7 for the maintenance of their uniforms, in violation of 12 NYCRR § 146-1.7.

## TENTH CAUSE OF ACTION
### (Uniform Payments/Deductions, NYLL § 193(3)(a) and 12 NYCRR § 146-1.8)

149.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

150.     At all relevant times, the Brioso Defendants required Plaintiffs to purchase and maintain their uniforms and failed to reimburse them for such expenses, in violation of NYLL § 193(3)(a) and 12 NYCRR § 146-1.8.

## ELEVENTH CAUSE OF ACTION
### (Notice and Recordkeeping, NYLL § 195(1) and 12 NYCRR § 146-2.2)

151.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

152.     The Brioso Defendants failed to furnish Plaintiffs at the time of hiring, in English and in the language identified by each employee as the primary language of such employee, with a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing

38

address if different; the telephone number of the employer; and anything otherwise required by law, in violation of NYLL § 195(1) and 12 NYCRR § 146-2.2(a).

## TWELFTH CAUSE OF ACTION
### (Wage Statements, NYLL § 195(3) and 12 NYCRR § 146-2.3)

153.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

154.    The Brioso Defendants failed to furnish to Plaintiffs with every payment of wages a wage statement that included: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, in violation of NYLL § 195(3) and 12 NYCRR § 146-2.3.

## THIRTEENTH CAUSE OF ACTION
### (Retaliation, 29 U.S.C. § 215(a)(3) and NYLL § 215)

155.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

156.    Pietro DiMaggio and/or his agent Safet Velovic constructively discharged, threatened, penalized, and discriminated against Plaintiff Marcelino Zapoteco because Zapoteco filed a complaint with Pietro that Velovic was unlawfully taking and retaining tips intended for food service workers.

157.    Pietro DiMaggio threatened and discriminated against Plaintiff Carlos Sebastian Sandobal because Pietro believed Sandobal was going to participate in a Department of Labor

investigation into the Brioso Defendants and/or provide information to the DOL and/or testify in a DOL proceeding, in violation of 29 U.S.C. § 215(a)(3) and NYLL § 215.

**FOURTEENTH CAUSE OF ACTION**
**(Fraudulent Conveyances, DCL §§ 273, 275, 276)**

158.    Plaintiffs repeat, reallege and incorporate herein each of the allegations in the preceding paragraphs with the same force and effect as if fully set forth herein.

159.    On information and belief, Pietro, in conveying his interests in Iron Mine Drive and Lamoka Ave. on October 30, 2017, without receiving any consideration, was rendered insolvent, as that term is defined in DCL § 271(1), and the conveyances were therefore fraudulent as to creditors within the meaning of DCL § 273.

160.    On information and belief, Pietro, in conveying his interests in Iron Mine Drive and Lamoka Ave. on October 30, 2017, without receiving any consideration, intended or believed that he would incur debts beyond his ability to pay the debts as they mature, and the conveyances were therefore fraudulent as to creditors within the meaning of DCL § 275.

161.    On information and belief, Pietro's transfers of Iron Mine Drive and Lamoka Ave. on October 30, 2017 were made with actual intent to hinder, delay or defraud Plaintiffs in their ability to collect a judgment against him, and the conveyances were therefore fraudulent as to creditors within the meaning of DCL § 276.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Named Plaintiffs, on their own behalves and on behalf of the other members of the FLSA Collective and the Class, pray for relief as follows:

A.  Damages in the amount of the unpaid minimum wages owed to each Plaintiff;

B.  Damages in the amount of the overtime compensation owed to each Plaintiff;

C.   Damages for the failure to compensate each Plaintiff at the applicable agreed-upon contractual rate(s) for work (s)he performed;

D.   Damages for each workday following the first ten (10) business days each Plaintiff was employed on which the Brioso Defendants failed to provide the written notice required by NYLL § 195(1)(a);

E.   Damages for each workday on which the Brioso Defendants failed to furnish each Plaintiff a wage statement as required by NYLL § 195(3);

F.   Declaratory and injunctive relief pursuant to NYLL § 198(1-b) for violations of NYLL § 195(1) and pursuant to NYLL § 198(1-d) for violations of NYLL § 195(3);

G.   Uniform maintenance pay pursuant to 12 NYCRR § 146-1;

H.   Compensatory damages in the amount of each deduction made from each Plaintiff's wages and each expenditure each Plaintiff was required to make in connection with his employment;

I.   Damages in the amount of all tips the Brioso Defendants or their agents unlawfully received or suffered or permitted ineligible workers to retain in violation of NYLL § 196-d and 12 NYCRR § 146-2.16;

J.   One hour's pay at the applicable basic minimum wage rate for each day each Plaintiff's spread of hours exceeded ten (10) hours;

K.   Liquidated damages pursuant to 29 U.S.C. § 260 and/or NYLL § 198(1-a) and/or NYLL § 663(1);

L.   Front pay for the period of time from when Marcelino Zapoteco was constructively discharged by the Brioso Defendants until such time as he obtained or obtains comparable work;

M.  Compensatory damages for the emotional distress, embarrassment, humiliation, and anguish suffered by Marcelino Zapoteco and Carlos Sebastian Sandobal as a result of Pietro's retaliatory actions against them;

N.  An order setting aside the transfers of Iron Mine Drive and Lamoka Ave. and restraining the Conveyance Defendants from disposing of these two properties under DCL § 279;

O.  An order attaching all of the Conveyance Defendants' assets under CPLR § 6201(3) and FRCP 64;

P.  Prejudgment interest, costs and reasonable attorney's fees;

Q.  Post-judgment interest;

R.  Inclusion in the judgment of a provision to the effect that if any amount(s) payable under any portion of the judgment pursuant to NYLL §§ 198 and/or 663 remain unpaid upon the expiration of ninety days following issuance thereof, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of that portion of the judgment shall automatically increase by fifteen percent; and

S.  Such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        December 29, 2020

GLADSTEIN, REIF & MEGINNISS LLP

By:  ___s/  Jessica E. Harris_____
Jessica E. Harris
Kent Y. Hirozawa
39 Broadway, Suite 2430
New York, New York 10006
(212) 228-7727
jharris@grmny.com
khirozawa@grmny.com

MAKE THE ROAD NEW YORK
Elizabeth Joynes Jordan
Frank Kearl
92-10 Roosevelt Avenue
Jackson, Heights, NY 11372
(718) 565-8500 x4425
elizabeth.joynesjordan@maketheroadny.org
frank.kearl@maketheroadny.org

Attorneys for Plaintiffs