UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

 ------------------------------------------------------------- -------------X

MARCELINO ZAPOTECO, JORGE RIVAS, AUNER
GUARDADO HERNANDEZ, CARLOS SEBASTIAN
SANDOBAL, YANI MACARENO, and FREDY ROJAS
PEREZ, on behalf of themselves and all others similarly
situated,

                                 Plaintiffs,

            - against -                                             No. 20-cv-6335 (LDH) (RER)

RAPI, INC. d/b/a BRIOSO RISTORANTE, PIETRO
DIMAGGIO, RAFFAELE DIMAGGIO, and LISA
DIMAGGIO,

                                 Defendants.

 -------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER OF ATTACHMENT AND PRELIMINARY INJUNCTION

GOLENBOCK EISEMAN ASSOR BELL &
PESKOE LLP
Alexander W. Leonard
Jeffrey A. Miller
711 Third Avenue
New York, NY 10017
(212) 907-7300
aleonard@golenbock.com
jmiller@golenbock.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................ 3

I.  PLAINTIFFS HAVE FAILED TO ESTABLISH AN ENTITLEMENT TO
    PRE-JUDGMENT ATTACHMENT UNDER NEW YORK LAW ................................. 3

    A.  Plaintiffs Have Not Met the Requirements for Attachment Under
        Section 6201 .............................................................................................. 4

    B.  Plaintiffs Have Not Demonstrated the Need for Attachment ................................. 9

    C.  If the Court Grants Plaintiffs' Motion, Lisa's Pre-Existing Property
        Interest and Peter's Other Assets Should Be Exempt from Attachment ............. 13

II. PLAINTIFFS HAVE FAILED TO SATISFY THE REQUIREMENTS FOR A
    PRELIMINARY INJUNCTION ........................................................................... 14

    A.  Plaintiffs Have Not Shown Irreparable Harm Absent Injunctive Relief .............. 14

    B.  Plaintiffs Have Not Shown that the Transfers were Fraudulent ......................... 16

    C.  A Preliminary Injunction Is an Unduly Severe and Inappropriate
        Remedy ................................................................................................... 16

III. PLAINTIFFS ARE NOT ENTITLED TO DISCLOSURE OF PETER'S
     ASSETS .......................................................................................................... 17

CONCLUSION ....................................................................................................... 18

3704685.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
    414 F.3d 400 (2d Cir. 2005)....................................................................14

*Abacus Federal Sav. Bank v. Lim*,
    8 A.D.3d 12 (1st Dep't 2004) ..................................................................5

*Allstate Ins. Co. v. TMR Medicbill Inc.*,
    No. 00 Civ. 0002 (CPS), 2000 WL 34011895 (E.D.N.Y. July 13, 2000) ...............17

*Asdourian v. Konstantin*,
    50 F. Supp. 2d 152 (E.D.N.Y. 1999) ...............................................5, 16

*Bernard v. Lombardo*,
    No. 16 Civ. 863 (RMB), 2016 WL 7377240 (S.D.N.Y. Nov. 23, 2016)................4

*Bollenbach v. Haynes*,
    No. 18 Civ. 997, 2018 WL 4278347 (S.D.N.Y. May 29, 2018) ...............4

*Borey v. National Union Fire Ins. Co.*,
    934 F.2d 30 (2d Cir. 1991)....................................................................15

*Brastex Corp. v. Allen Int'l, Inc.*,
    702 F.2d 326 (2d Cir.1983)....................................................................5

*Capital Ventures Int'l v. Republic of Argentina*,
    443 F.3d 214 (2d Cir. 2006)....................................................................4

*Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*,
    No. 16 Civ. 3181 (MKB)(CLP), 2018 WL 1402239 (E.D.N.Y. Mar. 4, 2018) .............8, 9, 13

*Computer Strategies, Inc. v. Commodore Bus. Machs. Inc.*,
    105 A.D.2d 167 (2d Dep't 1984) ..........................................................5

*De Ping Song v. 47 Old Country, Inc.*,
    No. 09 Civ. 5566, 2011 WL 3846929 (E.D.N.Y. Aug. 30, 2011)......................5, 10

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
    594 F. Supp. 2d 308 (E.D.N.Y. 2009) ......................................... *passim*

*Encore Credit Corp. v. LaMattina*,
    No. 05 Civ. 5442 (CPS), 2006 WL 148909 (E.D.N.Y. Jan. 18, 2006)....................4

*In re Enron Corp.*,
No. 04 Civ. 1367 (NRB), 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) ..................................13

*Fed. Ins. Co. v. Metro. Transportation Auth.*,
No. 17 Civ. 3425 (JFK), 2017 WL 2929471, (S.D.N.Y. July 10, 2017), *aff'd*,
785 F. App'x 890 (2d Cir. 2019) ..................................................................................14

*Fratelli Italiani, LLC v. Mironova*,
No. 18 Civ. 7013 (CM), 2019 WL 3759160 (S.D.N.Y. Apr. 11, 2019) ......................4, 10, 18

*Garcia v. La Revise Assocs. LLC*,
No. 08 Civ. 9356 (LTS)(THK), 2011 WL 135009 (S.D.N.Y. Jan. 13, 2011) ........................12

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007)...............................................................................14, 17

*Greuner Med. of NJ PC v. Brown*,
17 Civ. 04569 (AMD)(PKC), 2017 WL 3841856 (E.D.N.Y. Sept. 1, 2017) ......................5, 6

*In re Herz*,
556 B.R. 537 (Bankr. E.D.N.Y. 2016)...................................................................8

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
917 F.2d 75 (2d Cir. 1990)...............................................................................14, 16

*Krasniqi v. Rapi Inc.*,
No. 1:17-cv-3945 (E.D.N.Y.) ..............................................................2, 6, 7, 10

*In re Levinson*,
372 B.R. 582 (Bankr. E.D.N.Y. 2007)...................................................................13

*Man Wei Shiu v. New Peking Taste Inc.*,
No. 11 Civ. 1175 (NGG)(RLM), 2013 WL 2351370 (E.D.N.Y. May 28,
2013), *aff'd sub nom. Man Wei Shiu v. Jung & Assocs. Law Office P.C.*, 559
F. App'x 105 (2d Cir. 2014) ..............................................................5, 8, 9

*In re Murray*,
900 F.3d 53 (2d Cir. 2018)...............................................................................13

*In re Persky*,
893 F.2d 15 (2d Cir. 1989)...............................................................................8, 13

*Skyline Steel, LLC v. PilePro, LLC*,
No. 13 Civ. 8171 (JMF), 2015 WL 5076695 (S.D.N.Y. Aug. 27, 2015) ..................................4

*In re Starbucks Emp. Gratuity Litig.*,
264 F.R.D. 67 (S.D.N.Y. 2009), *aff'd sub nom. Barenboim v. Starbucks Corp.*,
549 F. App'x 1 (2d Cir. 2013) ...........................................................................12

*Travelers Ins. Co. v. 633 Third Assocs.*,
 973 F.2d 82 (2d Cir. 1992)............................................................................13

*U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*,
 62 F. Supp. 2d 915 (E.D.N.Y. 1999) ........................................................8, 13, 17

*United States v. McCombs*,
 928 F.Supp. 261 (W.D.N.Y.1995) ..................................................................7

*Weinberger v. Romero-Barcelo*,
 456 U.S. 305 (1982) ..................................................................................14

*Wilson v. Pasquale's DaMarino's, Inc.*,
 No. 10 Civ 2709 (PGG), 2019 WL 4601969 (S.D.N.Y. Sept. 23, 2019) ...............10

*Yong Xiong He v. China New Star Rest., Inc.*,
 No. 19 Civ. 5907 (PKC)(CLP), 2020 WL 6202423 (E.D.N.Y. Oct. 22, 2020).......9

**Other Authorities**

C.P.L.R. § 6201.......................................................................................4, 16

C.P.L.R. § 6212....................................................................................3, 4, 17

C.P.L.R. § 6220..........................................................................................17

DCL § 273...............................................................................................16

DCL § 275...............................................................................................16

DCL § 276...............................................................................................16

Fed. R. Civ. P. 64.........................................................................................3

Fed. R. Civ. P. 65........................................................................................17

iv

Defendants Pietro DiMaggio ("Peter") and Lisa DiMaggio ("Lisa") (collectively, "Defendants"), appearing by and through their attorneys, Golenbock Eiseman Assor Bell & Peskoe, LLP, hereby submit this memorandum of law in opposition to Plaintiffs' motion for an order of attachment, preliminary injunction, and disclosure of Peter's assets.

### PRELIMINARY STATEMENT

Peter DiMaggio and his brothers opened Brioso Ristorante ("Brioso") in Staten Island in 1998. For much of the 23 years since, Peter has spent 5-7 days a week at the restaurant, striving to ensure that it serves impeccable Sicilian food in a warm, family-oriented environment that is welcoming to both customers and staff, as a go-to standard in the community. He is also himself an immigrant from Italy and non-native English speaker who has worked relentlessly to build this business from the ground up.[1]

In the second half of 2015, however, Peter took an extended leave of absence from Brioso, as he began suffering from an acute, prolonged and troubling neurological condition. At that time, Peter lost his memory of the most recent several years, to the point that he had no recollection of his children or anyone he had met for the past decade or more. His memory loss was accompanied by extreme anxiety, nervousness, and shaking, which was incredibly concerning for himself and his family. His wife, Lisa, took him to the Staten Island University Hospital for evaluation, and he was transferred to the Staten Island Psychiatric Hospital shortly thereafter.

Peter was prescribed medication for his condition—which he still takes each and every day—and he slowly regained his memory over a period of months while receiving treatment from multiple medical professionals, including a psychotherapist a few days a week, and gave up his

---

[1] Unless otherwise stated below, the facts presented in this preliminary statement are set forth in the accompanying Declarations of Peter and Lisa DiMaggio.

day-to-day presence in the restaurant he loved.  He continued to receive such treatment for several months thereafter, well into 2016, and he is still plagued by anxiety and nervousness to this day.

In or around early 2016, following Peter's return to the restaurant, he and Lisa started discussing any steps that could be taken to safeguard themselves and their family (including their school-aged children) from any instability associated with recurrences of Peter's neurological issues and possible incapacitation given his role as primary income earner.  They met with an estate planning attorney who recommended [*prior to 2017*] that their residences be placed solely in Lisa's name so that she would have control over them, as opposed to joint control or Peter's sole authority, in the event that he became unfit to exercise such authority. These residences are their primary family home in Staten Island (101 Iron Mine Drive), which was notably already co-owned by Lisa since its purchase in 2006, and the family's former home in Staten Island (581 Lamoka Avenue), which is currently being rented out.

Such transfer of the two family residences had been discussed and decided upon prior to the filing of the *Krasniqi* wage claim against Brioso and its owners on June 30, 2017—a claim which settled for $75,000 after a brief period of time, without any action taken to certify a collective action of other employees, and which predated the current litigation by 3.5 years—and in the period since then there have been no mortgages, lines of credit, or other transfers of the residences, nor any significant transfers of business property, real property, or assets, even while Plaintiff Zapoteco filed a charge with the New York State Department of Labor that has been outstanding for over two (2) years without decision.

Although Plaintiffs have raised speculative claims of a significant amount, they are simply that, speculative.  Plaintiffs assert over $12 million dollars in alleged damages (which Plaintiffs claim in a footnote does *not* include all claims) with respect to this small, 98-seat neighborhood

2

Italian restaurant in Staten Island, with no more than 16 employees working at any one time, which has highly curtailed its operations this past year due to the COVID-19 pandemic restrictions.  The Plaintiffs did not file this case for nearly 3 years since Plaintiff Zapoteco ended his employment and asserts that he made his first wage complaint.  They now claim there is some urgency to attach the DiMaggios' two family properties they spent a lifetime building equity in, when no urgency apparently existed previously.  These speculative claims, particularly including but not limited to the unfounded allegation that a fraudulent conveyance occurred, should have to be proven rather than assumed or inferred, so that the DiMaggios can continue to safeguard themselves and their property during the pendency of this case.

In short, Peter and Lisa carried out the two property transfers at issue due to their concerns regarding Peter's health, not because of a potential judgment in this unknown litigation 3.5 years later. There is no reason to believe that court action is needed to restrain Peter and Lisa moving forward.  They have a 13 year old daughter, active businesses locally (including in Peter's name), and have not incurred any mortgages, lines of credit, or other transfers of the residences, nor any significant transfers of business property, real property, or assets, in over 3 years.

## ARGUMENT

## I.   PLAINTIFFS HAVE FAILED TO ESTABLISH AN ENTITLEMENT TO PRE-JUDGMENT ATTACHMENT UNDER NEW YORK LAW

The Federal Rules provide that attachment is available "under the law of the state where the court is located ... to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. The grounds for attachment under New York law are set out in C.P.L.R. § 6212, which requires that parties seeking to attach assets demonstrate (1) that there is a cause of action, (2) that it is probable that the plaintiff will succeed on the merits, (3) that one or more grounds for attachment provided

in section 6201 exist, and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. C.P.L.R. § 6212.

Given that pre-judgment attachment is a "harsh and extraordinary remedy," (*DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 322–24 (E.D.N.Y. 2009)), plaintiffs bear a "heavy burden" in establishing their right to such remedy, (*Bernard v. Lombardo*, No. 16 Civ. 863 (RMB), 2016 WL 7377240, at *3 (S.D.N.Y. Nov. 23, 2016)), and thus "the four elements set forth in Section 6212(a) are strictly construed in favor of those against whom attachment is sought." *Skyline Steel, LLC v. PilePro, LLC*, No. 13 Civ. 8171 (JMF), 2015 WL 5076695, at *2 (S.D.N.Y. Aug. 27, 2015); *accord Fratelli Italiani, LLC v. Mironova*, No. 18 Civ. 7013 (CM), 2019 WL 3759160, at *7 (S.D.N.Y. Apr. 11, 2019) (noting that pre-judgment attachment is an "extraordinary remedy"); *Bollenbach v. Haynes*, No. 18 Civ. 997, 2018 WL 4278347, at *2 (S.D.N.Y. May 29, 2018) ("attachment is a 'harsh' remedy that must be 'construed narrowly in favor of the party against whom the remedy is invoked'"). Further, pre-judgment attachment is subject to the discretion of the district court, which "may deny attachment for lack of need even though the plaintiff has established a ground under Section 6201 and satisfied the requirements of Section 6212." *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221 (2d Cir. 2006).

## A.   Plaintiffs Have Not Met the Requirements for Attachment Under Section 6201

Here, Plaintiffs seek attachment pursuant to C.P.L.R. § 6201(3).  Moving Br. at 7.  In order to establish grounds for attachment under C.P.L.R. § 6201(3), Plaintiffs must prove both (i) that the Defendant has assigned, disposed of, encumbered or secreted his property or removed it from the state, or is about to do any of these acts, **and** (ii) that Defendant has acted or will act with the **intent** to defraud Defendant's creditors or to frustrate the enforcement of a judgment that might be rendered in Plaintiffs' favor.  *Encore Credit Corp. v. LaMattina*, No. 05 Civ. 5442 (CPS), 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006).  Proof that the transfer of assets was undertaken with

fraudulent intent is strictly required, and its absence cannot be overcome regardless of the strength of Plaintiffs' showing as to the likelihood of success on the merits. *De Ping Song v. 47 Old Country, Inc.*, No. 09 Civ. 5566, 2011 WL 3846929, at *2 (E.D.N.Y. Aug. 30, 2011).

The burden is on the moving party to show that the grounds for attachment exist. *Asdourian v. Konstantin*, 50 F. Supp. 2d 152, 158 (E.D.N.Y. 1999).  Evidence of the disposition of property is insufficient to justify attachment; rather "fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." *Abacus Federal Sav. Bank v. Lim*, 8 A.D.3d 12, 13 (1st Dep't 2004); *see also Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331-32 (2d Cir.1983) ("it is incumbent upon [the plaintiffs] to demonstrate that the defendant is acting with intent to defraud."). The existence of an actual intent to defraud is never presumed and "not lightly inferred." *Man Wei Shiu v. New Peking Taste Inc.*, No. 11 Civ. 1175 (NGG) (RLM), 2013 WL 2351370, at *18 (E.D.N.Y. May 28, 2013), *aff'd sub nom. Man Wei Shiu v. Jung & Assocs. Law Office P.C.*, 559 F. App'x 105 (2d Cir. 2014) (quoting *Brastex Corp. v. Allen Int'l, Inc.,* 702 F.2d 326, 331 (2d Cir.1983)).

Moreover, "[t]he fact that the affidavits in support of an attachment contain allegations raising a suspicion of an intent to defraud is not enough. It must appear that such fraudulent intent really existed in the defendant's mind." *Computer Strategies, Inc. v. Commodore Bus. Machs. Inc.*, 105 A.D.2d 167, 173 (2d Dep't 1984); *Greuner Med. of NJ PC v. Brown*, 17 Civ. 04569 (AMD) (PKC), 2017 WL 3841856 at *2 (E.D.N.Y. Sept. 1, 2017); *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009).

To determine whether such intent to defraud exists, courts often consider the presence of "badges of fraud," which may include the following: (1) a close relationship between the parties involved in the transfer or transaction; (2) secrecy in the transfer; (3) a questionable transfer not in

the usual course of business; (4) gross inadequacy of consideration; (5) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (6) the use of fictitious parties; and (7) the retention of control of the property by the transferor after transfer. *Greuner Med. of NJ PC v. Brown*, No. 17 Civ. 04569 (AMD)(PKC), 2017 WL 3841856, at *2 (E.D.N.Y. Sept. 1, 2017).

Plaintiffs argue that five "badges of fraud" are present here (Moving Br. at 14), yet in actuality—as in *DLJ Mortgage*—there are at best three badges present: (i) "nominal consideration," (ii) "a close relationship with the transferee (his wife)," and (iii) continued "control of the property, the family home, even after the conveyance." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 322–23 (E.D.N.Y. 2009) (finding these badges of fraud insufficient for attachment where presence of other badges was lacking). There was no secrecy, no use of fictitious parties, and no departure from the usual course of business (as the transfers only concern family home ownership between spouses, not the transfer of business assets).

Further, although Plaintiffs repeatedly assert that Peter faced a three million dollar liability in the Krasniqi action, they provide no evidence for this apart from conjecture and mistaken assumptions. *See* Moving Br. at 4, 14, 17. To get this figure, Plaintiffs (a) credit Krasniqi's allegations as to his maximum potential damages, without any consideration for Brioso's defenses or the actual settlement amount, then (b) multiply this by the total number of restaurant employees at any given time (*see* Ritz Decl. ¶ 5), even though Krasniqi's alleged collective action excluded kitchen staff such as line cooks, dishwashers, and salad preppers (*Krasniqi v. Rapi Inc.,* No. 1:17-cv-3945 (E.D.N.Y.) Compl. [ECF No. 1] ¶ 23), meaning that Plaintiffs' employee count is roughly double what it should be, and (c) tack on a million dollars for Krasniqi's assumed and yet-to-be-incurred attorneys' fees. Moving Br. at 4. Moreover, there was no indication that any action was ever taken by anyone to join the Krasniqi case or certify it as a collective action under the FLSA.

There is simply no evidence, nor even the allegation, that Peter specifically perceived his liability to be $3 million or anything approaching that number at the time of the conveyances, or that such liability was ever probable or even contemplated by the parties.  *See* Declaration of Peter DiMaggio ("Peter Decl.") ¶¶ 20-21.  Defendants denied the allegations in *Krasniqi* and asserted that their total liability, if any, ranged from *de minimis* to $19,000.  *See Krasniqi* ECF No. 22 at 2, 4.  To avoid litigation, the court recommended a $75,000 settlement, the parties accepted, and such settlement was paid out in accordance with the agreement.  The restaurant paid the settlement without incident, using business funds only.  Peter Decl. ¶ 21.

The *Krasniqi* claim, which by both belief and settlement was a 5-figure claim requiring no payment from Peter individually, predates the current litigation by 3.5 years, and the transfers predate this litigation by more than 3 years.  *See Krasniqi* ECF No. 22 at 2, 4; Peter Decl. ¶¶ 15, 20-21.  These facts evince that the transfers did not render Peter insolvent at the time and were not undertaken to deprive Plaintiffs, who were at the time unforeseen future creditors, of any expected recovery.  *See DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 322–24 (E.D.N.Y. 2009) (transfer of home to wife, without evidence of real or perceived inability to pay debts for years thereafter, "at best, raised a mere suspicion" of fraudulent intent rather than showing "fraudulent intent really exists in the mind of the defendant" as required); *United States v. McCombs,* 928 F.Supp. 261, 275–77 (W.D.N.Y.1995) (fraudulent intent not established where it was unclear from the facts whether transferor was aware of the indebtedness at issue at the time of her familial transfer of property).   Unlike Plaintiffs' cases which relate to post-judgment attachment or involve some combination of the secret transfer or sale of business assets, defendants in bankruptcy, the use of difficult-to-trace intermediaries, recent transfers during the pendency of the litigation-at-hand, and the concealment of sale proceeds, the facts and circumstances here do

7

not suggest that the extreme remedies proposed by Plaintiffs are warranted, but should instead be left for discovery, summary judgment, and trial.

In addition, courts examine the "general chronology of the events and transactions under inquiry" to see whether they strongly suggest a fraudulent motive or perhaps signal some other justification. *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 323–24 (E.D.N.Y. 2009); *see also In re Herz*, 556 B.R. 537, 545 (Bankr. E.D.N.Y. 2016) (denying attachment where sequence of transactions involving real property did "not support a strong inference of fraudulent intent"). Pre-judgment attachment "is properly denied where defendants have proffered an arguable legitimate reason for transferring assets." *Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16 Civ. 3181 (MKB)(CLP), 2018 WL 1402239, at *6 (E.D.N.Y. Mar. 4, 2018) (quoting *Shiu*, 2013 WL 2351370, at *18) (internal quotation marks omitted).

Peter and Lisa have proffered a legitimate reason for the transfers—Peter's neurological issues and the accompanying desire to vest Lisa with control over the family residences—and the general chronology of events supports this justification.[2] Peter began to experience his pervasive memory loss and anxiety in the second half of 2015, forcing him into an extended leave of absence from the restaurant, and he continued to receive frequent treatment for his condition through much of 2016 involving multiple care providers. Peter Decl. ¶¶ 5-10; Declaration of Lisa DiMaggio

---

[2] Plaintiffs assert that "ordinarily" there is no legitimate reason to transfer between spouses a property held jointly as a tenancy by the entirety, as Peter and Lisa held the Iron Mine property prior to transfer. *See* Moving Br. at 15 (citing *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 925 (E.D.N.Y. 1999)). Yet here there is an obvious and legitimate reason for such a transfer—the threat of Peter's neurological condition incapacitating him and rendering him unfit to exercise his joint authority as necessary to take any action with respect to such property. On the other hand, there was little reason to transfer the family home to evade creditors, as it was already largely judgment-proof as long as Lisa is alive. *See* Section I(c) below and *In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989) ("Although a debtor tenant's interest is alienable, the value of that interest is problematical because if the non-debtor tenant survives the debtor, the non-debtor tenant acquires the entire fee and a purchaser takes nothing.").

("Lisa Decl.") ¶¶ 2-6.  Peter and Lisa consulted an attorney for estate planning purposes and discussed and agreed upon the transfers prior to the 2017 Krasniqi action, which they then executed in due course.  Peter Decl. ¶¶ 11-12, 14-15; Lisa Decl. ¶¶ 9-11; Declaration of Thaniel Beinert ¶¶ 4-6.  Lisa, who was co-owner of the Iron Mine property since its purchase in 2006, still retains sole ownership and all encumbrances on the residences were effected in 2016 or earlier.  Peter Decl. ¶¶ 13, 15, 17; Lisa Decl. ¶¶ 7, 13.  In addition, the restaurant's property and assets have not been transferred, further demonstrating that the conveyances at issue were a family matter stemming from Peter's medical condition, not an attempt to hide or diminish assets for collection. Peter Decl. ¶ 16; Lisa Decl. ¶ 12.  Under these circumstances, attachment must be denied. *Compare Man Wei Shiu v. New Peking Taste Inc.*, No. 11 Civ. 1175 (NGG) (RLM), 2013 WL 2351370, at *18 (E.D.N.Y. May 28, 2013), *aff'd sub nom. Man Wei Shiu v. Jung & Assocs. Law Office P.C.*, 559 F. App'x 105 (2d Cir. 2014) (no fraudulent intent where owner's health issues arguably justified transfer), *with Yong Xiong He v. China New Star Rest., Inc.*, No. 19 Civ. 5907 (PKC)(CLP), 2020 WL 6202423, at *7-8 (E.D.N.Y. Oct. 22, 2020) (cited by Plaintiffs) (finding that Defendants' stated rationale was not plausible where both business owners claimed they had been on the verge of retiring to China—without  their wives—to explain transfer of business and personal assets to wives and other family members, though neither had moved a year later); *accord Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16 Civ. 3181 (MKB)(CLP), 2018 WL 1402239, at *6 (E.D.N.Y. Mar. 4, 2018); *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 322 (E.D.N.Y. 2009).

### B.    Plaintiffs Have Not Demonstrated the Need for Attachment

Even if the technical requirements for fraudulent transfer and attachment were satisfied, Plaintiffs' motion should be denied because they have not shown that pre-judgment attachment is necessary to protect them.  "When, as here, attachment is being used as a means of security rather

than to obtain *quasi in rem* jurisdiction, courts should issue the attachment only upon a showing that *drastic action* is required for security purposes." *Fratelli Italiani, LLC v. Mironova*, No. 18 Civ. 7013 (CM), 2019 WL 3759160, at *7 (S.D.N.Y. Apr. 11, 2019) (emphasis in original) (internal quotations omitted).   Barring an apparent need for such drastic action, courts retain discretion not to grant pre-judgment attachment given the harsh and extraordinary nature of the remedy.  *Wilson v. Pasquale's DaMarino's, Inc.*, No. 10 Civ. 2709 (PGG), 2019 WL 4601969, at *7 (S.D.N.Y. Sept. 23, 2019); *see also De Ping Song v. 47 Old Country, Inc.*, No. 09 Civ. 5566, 2011 WL 3846929, at *2 (E.D.N.Y. Aug. 30, 2011) ("[M]ere satisfaction of the statutory criteria does not guarantee that the motion will be granted. Instead, relief is discretionary and since attachment is a harsh remedy, the court must exercise care in its application.") (quotations omitted).

Plaintiffs have not shown the need for such drastic action.  Plaintiffs bring this matter and this application based largely on a recitation of the same claims asserted in the *Krasniqi* matter, which settled for only $75,000, paid out over thirteen months, without any admission of liability or adjudication on the merits, and which never involved the certification of a collective action or the magnitude of claims that Plaintiffs now contend exist.  *See Krasniqi* ECF No. 22 at 2-5; Peter Decl. ¶ 21.  Further, Plaintiff Zapoteco admits that he made similar wage complaints back in 2018, but he sat on these claims for nearly 3 years.  (Complaint ¶¶ 3, 80-88.)  These claims are not clearly meritorious simply because Brioso was sued previously in the *Krasniqi* matter.  This also cannot be the justification for the drastic remedy of attachment.  By Plaintiffs' logic, any time a litigation ensues, no matter how minor, limited, and/or meritless, there would be the right to attachment and preliminary injunction against any subsequent transfers.

10

Although Plaintiffs have submitted a prima facie recitation of facts and allegations here that, if true, articulate a claim, liability on these issues, at the pre-discovery stage, is speculative at best, especially with respect to the eight-figure damage sum alleged at this point.  We strongly refute these highly speculative alleged damages, which are both abstract and massively inflated. Of the asserted $12.5 million in potential liability, more than $3 million consists of anticipated (and not yet incurred) attorneys' fees and nearly another $2 million stems from assumed interest. Ritz Decl. Ex. A at 1.  Half of the remainder is liquidated damages.  *Id*.  The magnitude of the compensatory damages, which are substantially less than 1/3 of the total amount claimed, largely results from Plaintiffs' assertions that the average Brioso employee worked between 54 and 72 hours weekly over the past 6 years, depending on position.  Ritz Decl. ¶ 5.  This simply is not credible.  The hours estimate is based on declarations of former employees such as Plaintiff Marcelino Zapoteco, who asserts that in every year he worked 68-75 hours per week.  Ritz Decl. Ex. B at 1.  However, Plaintiff Zapoteco was a *part-time* employee who regularly worked 3 days a week and attended school simultaneously for a large portion of this time.  Peter Decl. ¶ 27.  There are not enough hours in a day for him to have averaged 75 hours a week, nor was the restaurant open enough hours for him to work that much even if he worked 5-6 days per week as he incorrectly claims.  Peter Decl. ¶¶ 29-30.  Plaintiff Auner Guardado Hernandez likewise was a part-time employee and student throughout much or all of his employment and thus could not have worked as many hours as he claims.  Peter Decl. ¶ 28.  In addition, Plaintiffs claim several hundred thousand dollars in wage liability for 2020 (*see* Ritz Decl. Ex. A at 2-6), comparable to the alleged damages in 2018 and 2019, despite the fact that Brioso was operating in a heavily reduced capacity for much of 2020 by government mandate, including only offering takeout and therefore having no service staff for roughly half the year.  Peter Decl. ¶ 31.  Plaintiffs also seek attachment with

11

respect to two (2) plaintiffs who were not even employed until years after the alleged fraudulent conveyances took place (*i.e.* Yani Macareno and Fredy Rojas Perez).  (Complaint, ¶¶ 21-22.)

As for the tip misappropriation claims, though several declarants contend that Safet Velovic ("Velovic") had the power to hire, fire, and discipline staff and thus was an employer (Moving Br. at 2), he did not have this ability and none of them asserts that he hired, fired, or disciplined *them*, nor can they.  Only the DiMaggio brothers potentially held such authority or carried out such acts.  Peter Decl. ¶¶ 25-26.  Similarly, only the DiMaggio brothers, and not Velovic, ever set staff schedules.  *Id.*  As Plaintiffs concede, Velovic customarily functioned as a waiter (Moving Br. at 2), with the only exception being up to one day a week (Monday) when he covered the door as maître d and did not participate in the tip pool as a result.  Peter Decl. ¶ 26. His inclusion in the tip pool as a waiter was proper.  *In re Starbucks Emp. Gratuity Litig.*, 264 F.R.D. 67, 72–73 (S.D.N.Y. 2009), *aff'd sub nom. Barenboim v. Starbucks Corp.*, 549 F. App'x 1 (2d Cir. 2013) (supervisors who "spend a majority of their working hours performing the same tasks" as service staff and whose "additional responsibilities do not constitute exercise of authority over the creation, terms or conditions of the employment" are eligible for tip pool); *see also Garcia v. La Revise Assocs. LLC*, No. 08 Civ. 9356 (LTS)(THK), 2011 WL 135009, at *7 (S.D.N.Y. Jan. 13, 2011) (captains who played substantial role in customers' dining experience and who lacked hiring, firing, and staffing authority "did not act as employers" and "their inclusion in the tip pool was proper").

There is no evidence presented by Plaintiffs that Brioso, Raffaele, and Peter cannot collectively fund any probable liability in this action, nor that Peter, Lisa, or anyone else is actively seeking to evade payment of such liability (*see supra* at 7-9 and discussion of irreparable harm below).  In the absence of such evidence, Plaintiffs have not shown a need for the drastic remedy

3704685.1

of pre-judgment attachment.  *See Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16 Civ. 3181 (MKB) (CLP), 2018 WL 1402239, at *5 (E.D.N.Y. Mar. 4, 2018) (speculative showing of defendants' inability to pay judgment is insufficient to demonstrate need for attachment).

### C. If the Court Grants Plaintiffs' Motion, Lisa's Pre-Existing Property Interest and Peter's Other Assets Should Be Exempt from Attachment

As Plaintiffs acknowledge, Peter and Lisa purchased the Iron Mine property together as husband and wife in 2006.  Moosnick Decl. ¶ 7; *see also* Moosnick Decl. Ex. A.  Under New York law, Peter and Lisa therefore jointly owned the property as "tenants by the entirety," and each possessed the right to use an undivided half of the Iron Mine property during their joint lives with a survivorship right to the entire property, prior to the transfer at issue.  *In re Levinson*, 372 B.R. 582, 587 (Bankr. E.D.N.Y. 2007).  If the conveyance is nullified, Lisa must retain her pre-existing tenancy by the entirety, as a "creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." *Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 87 (2d Cir. 1992) (quoting *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 133–34, 508 N.Y.S.2d 17, 25 (2d Dep't 1986), *appeal dismissed*, 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987)); *In re Enron Corp.*, No. 04 Civ. 1367 (NRB), 2005 WL 356985, at *10 (S.D.N.Y. Feb. 15, 2005).

Accordingly, even if attachment is granted, it must not impair Lisa's right to an undivided half of the Iron Mine property and, in addition, Lisa "maintains her right of survivorship" and would own the Iron Mine property "free and clear of any third party's interest if [her husband] predeceases her." *In re Murray*, 900 F.3d 53, 61–62 (2d Cir. 2018) (citing *In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989)); *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 925 (E.D.N.Y. 1999) (finding that movants "are entitled to an order of attachment on the

Premises only to the extent of [husband]'s interest in the tenancy-by-the-entirety transferred to [wife]") (cited by Plaintiffs in support of attachment).

Moreover, Plaintiffs' application should fail to the extent that it seeks not only to attach the two real properties at issue, but also any other property interests held by Peter, without limitation. Presumably this application includes personal effects in his home and/or college funds saved for his two daughters. These go well beyond the two allegedly fraudulently transferred real properties, which as discussed above were transferred for legitimate health-related reasons. Therefore, all "other property" of Peter should also be exempt from attachment.

## II.   PLAINTIFFS HAVE FAILED TO SATISFY THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction preventing Defendants from transferring, assigning, selling, conveying, or otherwise disposing of the Iron Mine and Lamoka properties. The Court should deny Plaintiffs' application in its entirety.

A party seeking a preliminary injunction must not only establish a likelihood of success on the merits but also must demonstrate that, in the absence of injunctive relief, it will suffer an irreparable injury. *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *accord 1-800 Contacts, Inc. v. WhenU.com, Inc.,* 414 F.3d 400, 406 (2d Cir. 2005). Plaintiffs have not satisfied either element.

### A.   Plaintiffs Have Not Shown Irreparable Harm Absent Injunctive Relief

A showing of irreparable harm is considered the "single most important prerequisite" in satisfying the standard. *Grand River Enterprise Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007). The movant must show that "the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *Fed. Ins. Co. v. Metro. Transportation Auth.*, No. 17 Civ. 3425 (JFK), 2017 WL 2929471, at *2

(S.D.N.Y. July 10, 2017), *aff'd*, 785 F. App'x 890 (2d Cir. 2019); *see also Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies"). "A mere possibility of irreparable harm" is not sufficient. *Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 34 (2d Cir. 1991).

In the present case, Plaintiffs have clearly failed to meet their burden to show that irreparable harm is not only *possible* but rather "likely and imminent."  The only conduct they cite as proof of impending injury is the transfer of two personal, residential properties between spouses (one of which was co-owned by that spouse) nearly three and a half years ago.  There has been (i) no alleged or actual concealment, transfer, or dissolution of business assets and (ii) no alleged or actual sale, transfer, or encumbrance of the properties at issue since Peter vested his wife Lisa with sole ownership and control over the family homes in 2017.  Peter Decl. ¶¶ 16-17; Lisa Decl. ¶¶ 12-13. They also have a 13 year old daughter and are active in their community and businesses (including in Peter's name).  Peter Decl. ¶¶ 1-4, 13; Lisa Decl. ¶ 7.  There is zero evidence (or even argument) presented by Plaintiffs stating how exactly they will be irreparably harmed without their proposed injunctive relief.

For more than two (2) years, Plaintiff Zapoteco has been pursuing a New York State Department of Labor claim against Brioso and Peter specifically, yet neither Peter nor Lisa nor any other Defendant has taken any action to limit or otherwise frustrate the potential recovery of Plaintiffs or other creditors during that period.  Peter Decl. ¶¶ 16-17, 22-24.  Plaintiffs also waited, belying any alleged urgency, to file this case for nearly 3 years since Plaintiff Zapoteco allegedly made a wage complaint.  Plaintiffs present no other evidence supporting this injunction.  Under these circumstances, the requisite threat of imminent and irreparable injury is lacking.  *See*

*Asdourian v. Konstantin*, 50 F. Supp. 2d 152, 156 (E.D.N.Y. 1999) (significant passage of time reflects absence of irreparable harm).

Asserting a fraudulent conveyance cause of action does not *ipso facto* entitle the Plaintiffs to preliminary injunctive relief barring future conveyances, as they seem to assert.  They can pursue their unproven theories in discovery, summary judgment, and then trial.

### B.     Plaintiffs Have Not Shown that the Transfers were Fraudulent

The movants have also not shown a likelihood that the transfers at issue rendered Peter insolvent (DCL § 273), that he intended to or believed he would incur debts and liabilities beyond his ability to pay (DCL § 275), nor that he acted with actual intent to hinder, delay, or defraud the Plaintiffs or other creditors (DCL § 276).  Thus, even absent the lack of irreparable harm, Plaintiffs' preliminary injunction motion must fail.

As set forth previously (*see supra* at 7), there is no factual support for Plaintiffs' contention that the Krasniqi action carried probable or expected liability of $3 million, nor that Peter would likely incur debts that he could not pay as a result.  In reality, the Krasniqi action settled for $75,000 and the settlement was paid by Brioso in accordance with its terms.  Therefore, Plaintiffs have not shown a likelihood of success under DCL § 273 or DCL § 275.  The analysis of whether Peter had actual fraudulent intent under DCL § 276 is no different from the preceding C.P.L.R. § 6201(3) analysis for attachment purposes (*see supra* at 4-9).  For the same reasons that Plaintiffs do not satisfy the requirements for attachment, they have not shown a likelihood of success on their fraudulent conveyance claims to warrant a preliminary injunction.  *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 331 (E.D.N.Y. 2009).

### C.     A Preliminary Injunction Is an Unduly Severe and Inappropriate Remedy

A preliminary injunction is an equitable and "extraordinary" remedy that should not be granted routinely. *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 80 (2d Cir. 1990); *see*

3704685.1

*also Grand River Enterprise Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007) (a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"). The decision to grant a request for such extraordinary and drastic relief rests in the district court's sound discretion. *Grand River,* 481 F.3d at 66.

In the present context, an injunction is "more restrictive than attachment since a levy of attachment simply puts subsequent purchasers on notice that any sale will be subject to the plaintiff's pre-existing rights, but does not operate to prevent a sale." *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 926–27 (E.D.N.Y. 1999) (cited by Plaintiffs). An injunction would prevent the sale of the property to avoid losses should there be a decline in the housing market during the pendency of this action.  Thus an injunction would "unduly hamper" Defendants' rights, particularly with respect to Lisa's interest in the Iron Mine property for which Lisa held a pre-existing tenancy by the entirety.[3]  As such, the requested injunction is unwarranted even if Plaintiffs are deemed to have met the other necessary requirements, and rather, in the event that the Court finds Plaintiffs have made the requisite showing, Defendants submit that the Court should only enjoin Lisa "from entering into any contract or agreement to sell, encumber or otherwise dispose of the Premises without giving at least two weeks' notice to the [Plaintiffs] and to any purchaser or potential mortgagee of the pendency of this lawsuit."  *Id.* at 927.

## III.    PLAINTIFFS ARE NOT ENTITLED TO DISCLOSURE OF PETER'S ASSETS

A motion for disclosure of assets cannot be made, nor can such disclosure be ordered, until after attachment has been granted.  C.P.L.R. § 6220.  In the event that the Court denies Plaintiffs' motion for attachment based on the arguments set forth above, then the request for disclosure of

---

[3] For these reasons, in the event that this Court grants attachment and/or preliminary injunction, Defendants submit that the bond required of Plaintiffs under CPLR § 6212(b) and/or F.R.C.P. 65(c) should be no less than $15,000.  *See Allstate Ins. Co. v. TMR Medicbill Inc.*, No. 00 Civ. 0002 (CPS), 2000 WL 34011895, at *18, *19 (E.D.N.Y. July 13, 2000) (cited by Plaintiffs).

Peter's assets must be denied as well as moot. *Fratelli Italiani, LLC v. Mironova*, No. 18 Civ. 7013 (CM), 2019 WL 3759160, at *13 (S.D.N.Y. Apr. 11, 2019). Moreover, this disclosure is more properly reserved for post-judgment discovery in the event that judgment is ordered and unsatisfied.

## CONCLUSION

For the reasons set forth herein, the Court should deny Plaintiffs' motion for (i) attachment of certain real estate properties and such other property of Peter DiMaggio's as necessary to secure a potential judgment, (ii) a preliminary injunction restraining the sale, transfer, conveyance, assignment, or other disposal of those real estate properties, and (iii) disclosure of Peter DiMaggio's assets and debts owing to him, in its entirety.

Respectfully submitted,

Dated: March 9, 2021

**GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP**

By:   __s/ Alexander W. Leonard____
    Alexander W. Leonard
    Jeffrey A. Miller
    711 Third Avenue, 17th Floor
    New York, NY 10017
    (212) 907-7300
    aleonard@golenbock.com
    jmiller@golenbock.com

*Counsel for Rapi, Inc. d/b/a Brioso Ristorante, Pietro DiMaggio and Lisa DiMaggio*

18