UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARCELINO ZAPOTECO, JORGE RIVAS,
AUNER GUARDADO HERNANDEZ, CARLOS
SEBASTIAN SANDOBAL, YANI MACARENO,
and FREDY ROJAS PEREZ, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

                                                                                  **MEMORANDUM & ORDER**
   - against -                                                         20-CV-6335 (LDH) (JRC)

RAPI, INC. d/b/a BRIOSO RISTORANTE,
PIETRO DIMAGGIO, RAFFAELE DIMAGGIO,
and LISA DIMAGGIO,

                Defendants.
-------------------------------------------------------------------X
RACHEL P. KOVNER, United States District Judge:

      Plaintiffs are former employees of Brioso Ristorante in Staten Island. They have filed a collective action against their former employers that principally alleges violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Laws ("NYLL"). In addition, plaintiffs allege that one of the owners of Brioso Ristorante, Pietro DiMaggio, fraudulently conveyed two residential properties to his wife Lisa DiMaggio in 2017. Plaintiffs allege that the purpose of the conveyance was to defraud Mr. DiMaggio's creditors. Plaintiffs have filed a motion seeking (i) a preliminary injunction enjoining the DiMaggios from selling or otherwise disposing of the two residential properties during the pendency of this litigation, (ii) an order attaching those properties and other such property as may be necessary to secure a potential judgment, and (iii) an order requiring Mr. DiMaggio to disclose his interests in property and debts owed to him. For the reasons that follow, plaintiffs' motion is denied.

1

## BACKGROUND

### I. Factual Background

Pietro DiMaggio is a partial owner of Brioso Ristorante in Staten Island. P. DiMaggio Decl. ¶ 1 (Dkt. #40). He resides with his wife, Lisa DiMaggio, and their teenage daughters at 101 Iron Mine Drive in Staten Island. *Id.* ¶ 13. The DiMaggios' former home at 581 Lamoka Avenue in Staten Island is currently rented out to tenants. *Ibid.*; L. DiMaggio Decl. ¶¶ 7-8 (Dkt. #41). Prior to 2017, the two properties (the "Properties") were owned either jointly by the DiMaggios or solely in Mr. DiMaggio's name. *See* Moosnick Decl. ¶¶ 6, 16 (Dkt. #21).

In mid-2015, Mr. DiMaggio suffered a sudden and severe neurological episode. P. DiMaggio Decl. ¶¶ 6-9. This episode caused Mr. DiMaggio to experience extreme anxiety and to lose his memory covering the prior several years. *Id.* ¶ 7. Although Mr. DiMaggio has regained some memories, he continues to take medication for his anxiety and to see a psychotherapist. *Id.* ¶ 9.

About six months after his neurological episode, Mr. DiMaggio discussed his medical condition with a lawyer named Thaniel Beinert. *Id.* ¶ 11. Mr. Beinert offered to assist Mr. DiMaggio with estate planning. *Ibid.* Mr. Beinert had a number of discussions with the DiMaggios about estate planning throughout 2016 and 2017. Beinert Decl. ¶ 5 (Dkt. #42). During these discussions, Mr. Beinert advised Mr. DiMaggio to transfer his interest in the Properties into his wife's name due to Mr. DiMaggio's medical concerns. *Ibid.* While it is unclear precisely when the DiMaggios decided to transfer Mr. DiMaggio's interests in the Properties to his spouse, the DiMaggios claim they decided to do so before June 30, 2017. P. DiMaggio Decl. ¶ 14; L. DiMaggio Decl. ¶ 10.

2

On June 30, 2017, a former employee of Brioso Ristorante who is not a party to this action filed a lawsuit styled as a collective action that alleged violations of many of the same FLSA and NYLL provisions at issue in plaintiffs' lawsuit. *See* Compl., *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. June 30, 2017) (Dkt. #1). The plaintiff in that lawsuit, Arben Krasniqi, served Mr. DiMaggio with the complaint two weeks later. P. DiMaggio Proof of Service, *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. July 24, 2017) (Dkt. #8). In October of that year, an initial conference was held. Oct. 18, 2017 Minute Entry, *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. Oct. 18, 2017) (Dkt. #16). Twelve days after the initial conference, Mr. DiMaggio transferred his interest in the Properties to his spouse for no consideration. Moosnick Decl. ¶¶ 12, 18. The *Krasniqi* lawsuit ultimately settled in January 2018 for $75,000. *See* Jan. 26, 2018 Order, *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. Jan. 26, 2018); Joint Ltr. Mot. for Approval of Parties' Settlement at 5, *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. Jan. 12, 2018) (Dkt. #22). The settlement amount fell between the $45,000 or less that the parties estimated the plaintiff would recover if a trier of fact accepted the defendants' factual submissions, and the $114,000 to $141,000 that plaintiffs' lawyers calculated based on alternative projections. *See* Joint Ltr. Mot. for Approval of Parties' Settlement at 3-5, *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. Jan. 12, 2018) (Dkt. #22).

Since transferring the Properties to his spouse three and a half years ago, Mr. DiMaggio has not transferred any significant business assets or property to Ms. DiMaggio or anyone else. P. DiMaggio Decl. ¶ 16; L. DiMaggio Decl. ¶ 12. Ms. DiMaggio is still the sole owner of the Properties. L. DiMaggio Decl. ¶ 13. She has not taken out any mortgages or lines of credit against them. *Ibid.*

## II. Procedural Background

Plaintiffs filed this lawsuit in late 2020. Shortly afterwards, they filed a motion for a temporary restraining order ("TRO"), an order to show cause, a preliminary injunction, an attachment order, and a disclosure order concerning Pietro's assets. *See* Pls.' Proposed Order to Show Cause (Dkt. #14); Mem. of L. in Supp. of Pls.' Mot. for Attach. and Prelim. Inj. ("Pls.' Mem.") 1-2 (Dkt #23). Plaintiffs' goal was to prevent the DiMaggios from frustrating a future judgment in plaintiffs' favor by selling the two homes that plaintiffs allege Mr. DiMaggio fraudulently conveyed to Ms. DiMaggio, or by otherwise dissipating Mr. DiMaggio's remaining assets. Pls.' Mem. 1-2.

Judge DeArcy Hall denied plaintiff's request for a TRO. Jan. 8, 2021 Order (Dkt. #25). Noting that "the allegedly fraudulent conveyances at issue occurred over three years ago," Judge DeArcy Hall concluded that plaintiffs had not provided "specific facts that clearly show that further property transfers are likely to occur before an order to show cause hearing." *Id.* at 2. The Court ordered the defendants "to show cause as to (1) why an order should not issue attaching the [Properties] and such other property of Pietro DiMaggio as may be necessary to satisfy a judgment in the amount of $12,482,589 and directing disclosure of information regarding any property in which Pietro DiMaggio has an interest, or any debts owing to Pietro DiMaggio; and (2) why a preliminary injunction should not issue restraining Pietro DiMaggio and Lisa DiMaggio from selling, transferring, conveying, assigning or otherwise disposing of the Properties during the pendency of this litigation." *Id.* at 2-3. The Court scheduled a hearing on the order to show cause for February 10, 2021. *Id.* at 2.

At the parties' request, that hearing was adjourned until May 11, 2021. *See* Feb. 17, 2021 Order; Apr. 13, 2021 Order. Defendants stipulated that the DiMaggios would not "transfer, assign,

4

or encumber any real property or assets with a value of $25,000 or more until such time as the Court rules on [p]laintiffs' motion." Feb. 10, 2021 Stipulation at ¶ 4 (Dkt. #34-1). Judge DeArcy Hall has referred plaintiffs' motion to me for adjudication. *See* May 7, 2021 Order.

## DISCUSSION

Plaintiffs request an attachment order, a disclosure order concerning Mr. DiMaggio's assets, and a preliminary injunction. As explained below, these requests are denied.

### I.  Attachment Under CPLR § 6212(a)

Federal Rule of Civil Procedure 64 authorizes "[e]very remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The rule specifically identifies attachment as a potential remedy. Fed. R. Civ. P. 64(b). New York's Civil Procedure Law and Rules ("CPLR") permit attachment upon a showing that (i) "there is a cause of action," (ii) "it is probable that the plaintiff will succeed on the merits," (iii) "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff," and (iv) "one or more grounds for attachment provided in [S]ection 6201 exist." CPLR § 6212(a). As relevant here, one of those grounds is that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." CPLR § 6201(3).

A plaintiff "bears a heavy burden in attempting to establish [his] right to an attachment, because New York attachment statutes are construed strictly against those who seek to invoke the remedy." *Skyline Steel, LLC v. PilePro, LLC*, No. 13-CV-8171, 2015 WL 5076695, at *2 (S.D.N.Y. Aug. 27, 2015); *see, e.g.*, *Serenity Alpha, LLC v. Northway Mining, LLC*, 2021 WL 1202131, at *3 (N.D.N.Y. Mar. 31, 2021); *In re Amaranth Nat. Gas Commodities Litig.*, 711 F.

5

Supp. 2d 301, 305 (S.D.N.Y. 2010). Even when the requirements in Section 6212(a) are satisfied, a court may nevertheless deny a writ of attachment if the movant has not established a need for the writ. *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221-22 (2d Cir. 2006); *see, e.g.*, *Skyline*, 2015 WL 5076695, at *2; *see also* CPLR § 6223(a) ("If, after the defendant has appeared in the action, the court determines that the attachment is unnecessary to the security of the plaintiff, it shall vacate the order of attachment.").

Plaintiffs have not established that attachment is warranted on the present record under these principles because plaintiff has not shown that Mr. DiMaggio transferred the Properties to his wife with the "intent to defraud his creditors or frustrate the enforcement of a judgment." CPLR § 6201(3). To establish that element, a plaintiff's "moving papers must contain evidentiary facts . . . proving fraud." *DLJ Mortg. Cap. Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009) (quoting *Encore Credit Corp. v. LaMattina*, No. 05-CV-5442, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006)). "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient." *Ibid* (quoting *Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*, No. 06-CV-3915, 2008 WL 4179235, at *8 (S.D.N.Y. Sept. 10, 2008)).

Because "[f]raudulent intent is rarely susceptible to direct proof," such intent is generally inferred circumstantially. *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). Courts in this circuit often scrutinize transactions for "badges of fraud" that may evidence fraudulent intent. *DLJ Mortg. Cap.*, 594 F. Supp. 2d at 320. These badges include:

(1) the lack or inadequacy of consideration;

(2) the family, friendship, or close associate relationship between the parties;

(3) the retention of possession, benefit, or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

6

>    (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>
>    (6) the general chronology of the events and transactions under inquiry.

*Kaiser*, 722 F.2d at 1582-83.  The Second Circuit has written that an "insolvent" debtor's transfer of property to his spouse, "while retaining the use and enjoyment of the property, is a classic badge of fraud." *Id.* at 1582.  Nevertheless, because badges of fraud "are only evidence of the likelihood of fraud, [they] are not given equal weight[] and sometimes the circumstances indicate they should be given no weight at all."  *Geo-Grp. Commc'ns, Inc. v. Chopra*, No. 15-CV-1756, 2016 WL 4098552, at *7 (S.D.N.Y. July 27, 2016) (quoting *In re Khan*, No. 10-CV-46901, 2014 WL 10474969, at *25 (E.D.N.Y. Dec. 24, 2014)); *see, e.g.*, *DLJ Mortg. Cap.*, 594 F. Supp. 2d at 322-23 (finding plaintiff failed to sufficiently allege fraudulent intent, notwithstanding "several" badges of fraud).

On balance, plaintiffs have not demonstrated that Mr. DiMaggio's transfer of his interest in the Properties was a fraudulent conveyance.  The first three badges of fraud are present: Mr. DiMaggio transferred the Properties to his wife, without consideration, and he still resides at one of the Properties with his wife and daughters.  But the DiMaggios have offered a non-fraudulent explanation for those facts.  In sworn declarations, they state that Mr. DiMaggio transferred his interest in the Properties to Ms. DiMaggio as an estate-planning measure on the advice of an attorney, because of Mr. DiMaggio's serious medical issues.  *See* P. DiMaggio Decl. ¶¶ 12-14; L. DiMaggio Decl. ¶¶ 9-10.  That explanation is corroborated by a declaration from the DiMaggios' attorney confirming his advice.  *See* Beinert Decl. ¶ 5.  The DiMaggios' corroborated account undercuts any inference that the transfers were fraudulent simply because they were made to a spouse without consideration and because Mr. DiMaggio continues to reside at the family home.  *See, e.g.*, *In re Manshul Const. Corp.*, No. 99-CV-2825, 2000 WL 1228866, at *48

7

(S.D.N.Y. Aug. 30, 2000) (finding that certain asset transfers were not fraudulent because they "were made pursuant to a valid estate plan[,] . . . documented[,] and made on the advice of credible counsel," even though other fraudulent transfers had been made).

Plaintiffs also point to the *Krasniqi* litigation and its timing as evidence of fraudulent intent. They emphasize that Mr. DiMaggio transferred his interest in the Properties about four months after the filing of the *Krasniqi* lawsuit, and 12 days after an initial conference in that case. *See* Pls.' Mem. 14. And plaintiffs assert that the *Krasniqi* case could have led to millions of dollars in damages. *See ibid.* Taken by themselves, the timing and asserted magnitude of the lawsuit could support an inference that Mr. DiMaggio's transfers of the property in October 2017 were fraudulent conveyances designed to frustrate creditors from the *Krasniqi* suit. But a fuller history undercuts such an inference. Mr. DiMaggio avers that he believed at all times during the *Krasniqi* suit "that the restaurant would be able to pay any resulting liability or settlement," and that he himself would not be bankrupted by the case. P. DiMaggio Decl. ¶ 20. And subsequent events are more consistent with his account than with plaintiffs': The case was settled as to all defendants for a total of $75,000—an amount the parties agreed was "fair and reasonable." Joint Ltr. Mot. for Approval of Parties' Settlement at 3, *Krasniqi v. Rapi Inc.*, No. 17-CV-3945 (E.D.N.Y. Jan. 12, 2018) (Dkt. #22). And the settlement was paid by Brioso Ristorante. P. DiMaggio Decl. ¶ 21. The fully paid settlement undercuts the suggestion that Mr. DiMaggio's transfer of assets was designed to frustrate collection on a judgment in that litigation. Moreover, the parties' ultimate valuation of the case at $75,000, which was paid by Brioso Ristorante, provides reason to credit Mr. DiMaggio's assertion that he believed any liability in that case could and would be paid by the restaurant, and that the litigation did not threaten him with insolvency. *Id.* ¶ 20; *cf. Kaiser*, 722

8

F.2d at 1582 (describing an *insolvent* debtor's transfer to a spouse without consideration, despite continued use of the property, as a classic badge of fraud).

Also relevant here is the absence of any "pattern or series of transactions" suggesting that the DiMaggios acted with fraudulent intent. *Kaiser*, 722 F.2d at 1583. Plaintiffs seek to prove fraudulent intent based on a pair of transfers that occurred three and a half years ago. There is no allegation that the DiMaggios have otherwise taken action to frustrate a future judgment. For example, plaintiffs do not challenge Mr. DiMaggio's declaration that he has not transferred any other significant business assets to Ms. DiMaggio or anyone else. P. DiMaggio Decl. ¶ 16; L. DiMaggio Decl. ¶ 12. Nor do plaintiffs challenge Ms. DiMaggio's declaration that she is still the sole owner of the Properties and that she has not taken out any mortgages or lines of credit against them. L. DiMaggio Decl. ¶ 13. While these facts are not dispositive as to whether the DiMaggios acted with fraudulent intent, they do lend further credence to the DiMaggios' account of what transpired. I conclude that plaintiffs have not met their heavy burden for obtaining an attachment order.

## II.   Disclosure Under CPLR § 6220

Plaintiffs have requested that Mr. DiMaggio be ordered to disclose all property in which he has an interest, and any debts owing to him, under CPLR § 6220. *See* Pls.' Mem. 15. That statute authorizes courts to order disclosure of information "at any time after the granting of an order of attachment and prior to final judgment in the action." CPLR § 6220. Because plaintiffs' motion for an attachment order is denied, plaintiffs are not entitled to a disclosure order under Section 6220. *See, e.g.*, *Fratelli Italiani, LLC v. Mironova*, No. 18-CV-7013, 2019 WL 3759160, at *13 (S.D.N.Y. Apr. 11, 2019) (holding that a party's request for disclosure under CPLR § 6220 "must be denied" because the court had denied that party's motion for an attachment).

9

**III.     Preliminary Injunction**

Finally, plaintiffs seek a preliminary injunction restraining the DiMaggios "from selling, transferring, conveying, assigning[,] or otherwise disposing of" the Properties during the pendency of this lawsuit. Pls.' Mem. 16. A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). Such injunctions are "never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain such an injunction, as a general matter, a litigant must establish (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm in the absence of preliminary relief, (iii) that the balance of equities tips in the movant's favor, and (iv) that an injunction is in the public interest. *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 225 (2d Cir. 2021). The "most important" of these requirements is irreparable harm. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Courts consider harm "irreparable" when it "cannot be remedied after a final adjudication." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010). The harm must be "actual and imminent," not "remote or speculative." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quoting *Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995)).

Here, even assuming that plaintiffs have satisfied the other requirements for obtaining a preliminary injunction, they have failed to show a likelihood of a harm that is "actual and imminent." *Dexter*, 663 F.3d at 63. Plaintiffs argue that "the evidence of the fraudulent conveyances of" the Properties in 2017 "supports a finding that [Mr. DiMaggio] has taken steps to dissipate and conceal his assets and, unless the court issues an injunction, will continue to do so." Pls.' Mem. 20 (citation omitted). But as explained above, the present record does not support the conclusion that the 2017 transfers were fraudulent conveyances. As a result, those transfers

do not support a finding "that [Mr. DiMaggio] has taken steps to dissipate and conceal his assets" in the past. *Ibid.*

Moreover, plaintiffs' suggestion that Mr. DiMaggio (or his spouse) will "continue to" dissipate and conceal assets in the absence of an injunction restraining the Properties, Pls.' Mem. 20, is speculative at best. The DiMaggios did not sell or otherwise encumber the Properties during the months in 2017 and 2018 when the *Krasniqi* lawsuit was pending. Nor did they do so in the nearly four years since the lawsuit settled. Instead, the DiMaggios have continued to reside at one of the Properties with their daughters, while renting out the other. P. DiMaggio Decl. ¶ 13. Mr. DiMaggio continues to work at Brioso Ristorante, where he remains a part-owner. *See id.* ¶¶ 1, 4, 10. And plaintiffs do not allege that the DiMaggios have engaged in conduct after 2017 that amounts to dissipation or concealment of assets. On this record, plaintiffs' argument that there is an actual and imminent risk that the DiMaggios will engage in transfers of the Properties designed to conceal or dissipate assets in the absence of a preliminary injunction is improperly "speculative." *Dexter*, 663 F.3d at 63.

Although plaintiffs cite purportedly analogous cases, the courts in those cases inferred fraudulent intent based on far more suspicious activity. For example, the court in *Allstate Insurance Company v. TMR Medicbill Inc.* determined it was "clear" that defendants had "systematically dissolved the corporations used to perpetrate [an] insurance fraud and closed many of the corporate accounts used to hold the claim amounts." No. 00-CV-0002, 2000 WL 34011895, at *13 (E.D.N.Y. July 13, 2000). Likewise, the court in *Capital Distributions Services, Limited v. Ducor Express Airlines, Inc.* found that the defendant had made "misleading statements about the amount of money that had been conveyed to him," "repeatedly evaded questions about his assets," and at one point abruptly walked out of his deposition when faced with questions he did not want

11

to answer. 440 F. Supp. 2d 195, 210 (E.D.N.Y. 2006). Accordingly, none of the cases cited by plaintiffs are persuasive.

## CONCLUSION

Plaintiffs' motion for an attachment order, disclosure order, and preliminary injunction is denied.

SO ORDERED.

                                                       /s/ Rachel Kovner
                                                      RACHEL P. KOVNER
                                                      United States District Judge

Dated:        May 17, 2021
               Brooklyn, New York