## Gladstein, Reif & Meginniss, llp
**ATTORNEYS AT LAW**

AMY GLADSTEIN
JAMES REIF
WALTER M. MEGINNISS, JR.
KENT Y. HIROZAWA
BETH M. MARGOLIS
WILLIAM S. MASSEY *
AMELIA K. TUMINARO
KATHERINE H. HANSEN *
JESSICA E. HARRIS *
HYUNGWOO DAVID KIM

39 BROADWAY • SUITE 2430
NEW YORK, NEW YORK 10006
(212) 228-7727
FAX: (212) 228-7654

JUDITH I. PADOW
YVONNE BROWN
*Of Counsel*

\* ALSO ADMITTED IN NJ

December 22, 2022

BY ECF

Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Marcelino Zapoteco, et al. v. RAPI, Inc. d/b/a Brioso Ristorante, et al.*,
            Case No. 1:20-cv-06335 (LDH) (JRC)

Dear Judge DeArcy Hall:

      We represent the Plaintiffs in the above-captioned matter, together with co-counsel Elizabeth Joynes Jordan, Deputy Legal Director of Make the Road New York. On December 14, 2022, the United States Bankruptcy Court for the Eastern District of New York approved the Stipulation of Settlement ("Settlement") entered into by all of the plaintiffs and defendants in this matter. The Settlement provides for the Plaintiffs to obtain voluntarily dismissal of the instant action upon payment of the settlement payments provided for therein. Settlement, ¶ 7.D (Declaration of Kent Y. Hirozawa ("Hirozawa Decl."), Ex. A).

      We write to request that this Court approve the Settlement as a fair and reasonable resolution of the Plaintiffs' claims under the Fair Labor Standards Act and the New York Labor Law under the standards set forth in *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir.

Hon. LaShann DeArcy Hall
December 22, 2022
Page 2

2015). The Plaintiffs have agreed to compromise their claims in light of the significant collection issues that have become apparent in the Chapter 11 proceeding initiated by Defendant Rapi, Inc. on June 14, 2022, and the litigation risks in this case and the Chapter 11 proceeding. The Defendants consent to this request.

**Background**

1. *Plaintiffs' claims and the proceedings in this Court*

Plaintiffs Marcelino Zapoteco, Jorge Rivas, Auner Guardado Hernandez, Carlos Sebastian Sandobal, Yani Macareno, and Fredy Rojas Perez,[1] former employees of the Defendants, commenced this action on December 29, 2020 against Rapi, Inc. d/b/a Brioso Ristorante, Pietro DiMaggio, Raffaele DiMaggio (collectively, "FLSA Defendants"), and Lisa DiMaggio. The complaint asserts claims under the Fair Labor Standards Act, as amended, 29 U.S.C. §201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs alleged that the FLSA Defendants engaged in substantial wage theft and failed to pay them the legally-required minimum wage (in violation of 29 U.S.C. § 206(a)(1), NYLL § 652(1) and 12 NYCRR § 146-1.2), spread of hours pay (in violation of 12 NYCRR § 146-1.6), and time and one-half for their overtime hours (in violation of 29 U.S.C. § 207(a)(1) and 12 NYCRR § 146-1.4); unlawfully deducted monies from their tips and/or wages (in violation of NYLL §§ 193, 196-d and 12 NYCRR §§ 146-2.16, 2.7); misappropriated their tips (in violation of NYLL § 196-d and 12 NYCRR § 146-2.16); unlawfully charged them for their required uniforms and/or failed to reimburse them for the purchase of their required uniforms (in violation of NYLL § 193(3)(a)

---

[1] Former employees Ivis Vanessa Barahona Barahona, Miguel Zapoteco Garcia, Moises Zapoteco Garcia, Fadil Qosja, Desiderio Perez Zacarias, and Gerson David Perez joined as opt-in plaintiffs after the initial filing.

Hon. LaShann DeArcy Hall
December 22, 2022
Page 3

and 12 NYCRR § 146-1.8); failed to compensate them for uniform maintenance (in violation of 12 NYCRR § 146-1.7); and failed to provide them legally required notices concerning the terms and conditions of their employment (in violation of NYLL §§ 195(1) and (3) and 12 NYCRR §§ 146-2.2, 2.3). Plaintiffs Marcelino Zapoteco and Carlos Sebastian Sandobal asserted an additional claim that Pietro DiMaggio unlawfully retaliated against them in violation of 29 U.S.C. § 215(a)(3) and NYLL § 215. Finally, Plaintiffs alleged that Pietro DiMaggio fraudulently conveyed his real estate interests to his wife, Lisa DiMaggio, for no consideration.

In the Initial Pretrial Discovery and Mediation Schedule (Doc. 66), the Court stayed this litigation, except for limited discovery, pending settlement discussions between the parties. After settlement discussions failed, Plaintiffs requested that the Court lift the stay and allow discovery to move forward in earnest, to aid settlement through fuller disclosure. *See* August 9, 2021 Joint Status Report (Doc. 69); Plaintiffs' September 4, 2021 Motion to Lift Stay (Doc. 72). The Court lifted the stay, and the parties began exchanging discovery requests and responses. Disputes arose over the scope of the discovery and compliance on both sides, and the parties submitted motions to the Court to resolve these disputes. *See* December 22, 2021 Cross-Motions to Compel Discovery (Doc. 79); March 7, 2022 Joint Motion for Discovery (Doc. 86); March 25, 2022 Joint Motion for Discovery (Doc. 87). On April 27, 2022, the Court ordered Defendants to complete the production of documents by May 20, 2022, and, by May 27, 2022, to identify the requests as to which there were no responsive documents.

On May 19, 2022, the day before the first deadline, Defendants' counsel moved to withdraw from the matter. *See* Notice of Motion to Withdraw as Counsel (Doc. 89). In support of their motion, Defendants' counsel stated that they had suffered a "breakdown in trust, cooperation, and communication" with their clients, and that Defendants had "a very substantial

Hon. LaShann DeArcy Hall
December 22, 2022
Page 4

outstanding balance due" to counsel. *See* Declaration of Alexander W. Leonard (Doc. 90). Plaintiffs opposed the motion, s*ee* Plaintiffs' Mem. of Law in Opposition (Doc. 92), and the Court ordered all defendants and counsel to appear in person on June 15, 2022.

    2.  *The Chapter 11 proceeding*

On June 14, 2022, the day before the in-person conference, Defendant Rapi, Inc. ("Debtor" or "Corporate Defendant") filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the Eastern District of New York. *See* Petition, *In re Rapi, Inc.*, No. 1-22-41365-JMM (Bankr. E.D.N.Y. June 14, 2022), ECF Doc. 1. Approximately one month later, the Debtor brought an adversary proceeding in bankruptcy court seeking to extend the 11 U.S.C. § 362(a) automatic stay to the non-debtor Defendants, or in the alternative, enjoining Plaintiffs under 11 U.S.C. § 105(a) from further litigating this action. *See* Complaint, *Rapi, Inc. v. Zapoteco, et al*, No. 1-22-01058-JMM (Bankr. E.D.N.Y. July 19, 2022), ECF Doc. 1. The bankruptcy court denied extension of the automatic stay but granted a preliminary injunction restraining Plaintiffs from prosecuting this action. *See* Order, *Rapi, Inc. v. Zapoteco, et al*, No. 1-22-01058-JMM (Bankr. E.D.N.Y. July 19, 2022), ECF Doc. 21. Plaintiffs also commenced an adversary proceeding against the Debtor, seeking a declaration of non-dischargeability of debts arising out of Debtor's violations of the FLSA and the NYLL, as alleged in the instant action. *See* Complaint, *Zapoteco, et al v. Rapi, Inc.*, No. 1-22-01072-JMM (Bankr. E.D.N.Y. September 8, 2022), ECF Doc. 1. Plaintiffs' adversary complaint has not been litigated on the merits. Plaintiffs have filed claims in the total amount of approximately $4.96 million, inclusive of the attorneys' fees and prejudgment interest accrued as of the date of the filing of the bankruptcy petition. *See* Claims Nos. 6-17, *In re Rapi, Inc.*, No. 1-22-41365-JMM (Bankr. E.D.N.Y.).

Hon. LaShann DeArcy Hall
December 22, 2022
Page 5

3. *Settlement negotiations*

When the parties began discussing settlement in February 2021, there were nine named and opt-in plaintiffs in this case. Plaintiffs agreed for purposes of settlement to forego statutory prejudgment interest and to limit damages to the six-year period preceding the filing of the complaint notwithstanding their claim for equitable tolling, offering to settle the case for $2.5 million inclusive of attorney's fees and costs. Defendants responded with an offer of $100,000 to settle for the nine plaintiffs. Plaintiffs declined to counter this offer, given the disparity between the parties' respective positions.

By November 2021, three additional plaintiffs had opted in and seven months of further litigation had taken place. Defendants offered to settle Plaintiffs' claims for $130,000. Plaintiffs again declined to counter, as the offer did not represent an improvement on the prior offer for nine plaintiffs. On February 15, 2022, the parties participated in mediation at the direction of the Court, during which Defendants offered to settle for the entire proposed class for $300,000, including attorneys' fees and costs. Since the damages for the proposed class were approximately $8.7 million at the time, and substantial additional attorneys' fees had been incurred, this offer was inferior to the prior offers; Plaintiffs accordingly declined to counter. Defendants then offered $300,000, inclusive of attorneys' fees. Following the filing of the bankruptcy petition, Defendants offered to settle for $25,000 or $30,000 per Plaintiff, with no mention of fees – an offer that was not materially different from Defendants' previous offer. In response, Plaintiffs offered to settle for approximately $2.66 million plus fees, stating that it was an opening offer subject to negotiation.

Beginning on September 30, 2022, at the direction of the bankruptcy court, the parties participated in mediation before a court-appointed mediator. The mediation resulted in an

Hon. LaShann DeArcy Hall
December 22, 2022
Page 6

agreement to settle Plaintiffs' claims for $700,000, including attorneys' fees and costs in the amount of $217,129. Hirozawa Decl., ¶ 11. The parties reduced the agreement to writing in the Settlement and on November 22, 2022, the Debtor moved for approval of the Settlement pursuant to Fed. R. Bankr. P. 9019(a). Bankr. E.D.N.Y. No. 1-22-41365-JMM, ECF Doc. 76. On December 14, 2022, the bankruptcy court granted the motion, approving the Settlement.

The Settlement provides for the parties to seek approval of the Settlement by this Court once the bankruptcy court has approved it. Settlement, ¶ 7.B., and if this Court approves it, for the Debtor to obtain confirmation of a Chapter 11 plan incorporating the terms of the Settlement. *Id.*, ¶ 7.C. Upon payment of the monies provided for in the Settlement, the Plaintiffs are to voluntarily dismiss the instant action. *Id.*, ¶ 7.D.

**Discussion**

> In considering whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:
>
>> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Oxley v. Excellent Home Care Servs., LLC*, No. 18-cv-2374 (RJD) (CLP), 2020 WL 589581 at *1-2 (E.D.N.Y. Jan. 8, 2020) (citations omitted) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)), *report and recommendation adopted*, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020).

Further, "if attorneys' fees and costs are provided for in the settlement, district courts will

Hon. LaShann DeArcy Hall
December 22, 2022
Page 7

also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Frias v. Restoration Specialties, Inc.*, No. 20-CV-6560 (AEK), 2021 WL 4896204, at *1 (S.D.N.Y. Oct. 19, 2021) (internal quotation marks omitted). We address the above factors, including the reasonableness of the fees and costs, in turn.

1. *The Plaintiffs Would Face Serious Challenges in Collecting a Judgment Substantially Greater than the Settlement Amount.*

As set forth in the claims they filed in the Chapter 11 case, Plaintiffs estimate that, as of the filing date of the Chapter 11 petition on June 14, 2022, they were entitled to approximately $4.96 million in damages, including prejudgment interest, liquidated damages, and attorneys' fees and costs. However, the Corporate Defendant's disclosures in the bankruptcy proceeding have raised serious doubts about the prospects for collecting any amount approaching the full measure of damages for Defendants' violations, including any amount substantially greater than the settlement amount. Plaintiffs therefore have genuine concerns about collection, which "militate[] in favor of finding a settlement reasonable." *Id.* (internal quotation marks omitted); *see also Cortes v. New Creators, Inc.,* No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (because of one of the defendant's pending bankruptcy, "plaintiffs have serious concerns about collectability" of an FLSA award, "which militate[d] in favor of finding a settlement reasonable"); *see also Meza v. 317 Amsterdam Corp.,* No. 14-CV-9007 (VSB), 2015 WL 9161791, at *1 (S.D.N.Y. Dec. 14, 2015) (fact that FLSA defendant was "considering" bankruptcy militated in favor of approving settlement). These looming collection issues significantly restrict the Plaintiffs' range of possible recovery.

Hon. LaShann DeArcy Hall
December 22, 2022
Page 8

Given these issues, it is all the more necessary for the parties to "avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Oxley*, 2020 WL 589581, at *1-2. All parties face substantial burdens and costs associated with continuing to litigate the matter, both in terms of time and expense. Many document production issues remain unresolved and no depositions have been taken. Were the case to go forward, the parties would need to expend significant additional time and resources on discovery, possibly motions for summary judgment, and ultimately trial – not only in the instant action, but also in the pending adversary proceedings in bankruptcy court.

2. *The Parties Face Litigation Risks Arising Out of Disputes Concerning Material Facts.*

The parties disagree about the number of hours Plaintiffs worked at Brioso Ristorante, as well as the amounts Defendants paid them. These disputes could significantly impact Plaintiffs' recovery, as Plaintiffs' "ability to prove all the hours [they] claim[] to have worked would depend largely on [their] credibility at trial" since Defendants did not maintain adequate time records as required by law. *Escobar v. Fresno Gourmet Deli Corp.*, No. 16 CIV. 6816 (PAE), 2016 WL 7048714, at *2 (S.D.N.Y. Dec. 2, 2016); *see Churiy v. Schorsch*, No. 18-CV-6373 (OTW), 2019 WL 2994237, at *2 (S.D.N.Y. July 9, 2019) (finding settlement agreement reasonable in part because defendants did not maintain records of plaintiff's hours and thus plaintiff faced "the risk that a fact finder may credit Defendants' witnesses' testimony that Plaintiff did not work as many hours as she claims"); *Sampaio v. Boulder Rock Creek Devs., Inc.*, No. CV-07-153 (ETB), 2007 WL 5209390, at *1 (E.D.N.Y. Sept. 6, 2007) (finding settlement amount reasonable "in light of the fact that there is little to no documentation of the hours that plaintiff worked each week, the parties differ widely as to the number of hours that plaintiff actually worked, and the respective burdens the parties face with respect to their claims

Hon. LaShann DeArcy Hall
December 22, 2022
Page 9

and defenses.").

"There is also a risk that [Plaintiff] would not have been awarded statutory liquidated damages," *Escobar*, 2016 WL 7048714, at *2, which can be reduced to zero if Defendants establish that their violations were in good faith. 29 U.S.C. § 260; NYLL §§ 198(1-a), 663(1).

These risks are compounded by the additional issues posed by the Corporate Defendant's bankruptcy. The bankruptcy court has preliminarily enjoined Plaintiffs from pursuing this litigation, *see* Order, *Rapi, Inc. v. Zapoteco, et al*, No. 1-22-01058-JMM (Bankr. E.D.N.Y. July 19, 2022), ECF Doc. 21. Absent settlement, several significant issues will have to be litigated in bankruptcy court, including the bankruptcy court's authority to determine the wage claims against the non-debtor Defendants, the dischargeability of the wage claims, and, at least as to the Corporate Defendants, the merits of the wage claims. The Settlement would eliminate the need for these proceedings and the attendant uncertainties.

3. *The Settlement Was the Product of Arm's-Length Bargaining Between Experienced Counsel, and is Not the Product of Fraud or Collusion.*

The Agreement was reached through arms-length bargaining by experienced counsel, and reflects a careful balancing of the respective litigation risks and anticipated litigation burdens faced by all parties. Plaintiffs' counsel's experience in wage and hour and other litigation is set forth in the Hirozawa Declaration. Both parties conducted substantial factual investigation into the claims and engaged in extensive adversarial negotiations before reaching the settlement agreement in a court-ordered mediation. Plaintiffs' counsel has discussed with each of the Plaintiffs the terms of the Settlement, including the amounts of damages claimed and to be paid pursuant to the settlement, and each of the Plaintiffs have agreed to and signed the Settlement. Hirozawa Decl., ¶ 7.

Hon. LaShann DeArcy Hall
December 22, 2022
Page 10

The Settlement was not the product of fraud or collusion. Further, the proposed settlement does not present the public policy concerns expressed in *Cheeks* and its progeny. The settlement does not contain "highly restrictive confidentiality provisions," an "overbroad release" that would waive all claims – employment-related or otherwise – against the Defendants, a pledge by Plaintiffs' attorneys not to represent any person bringing similar claims against the Defendants, or a plaintiff taking a settlement offer merely out of desperation. *See Cheeks*, 796 F.3d at 206.

4. *The Attorneys' Fees and Costs are Reasonable*

The reasonableness of attorneys' fees is assessed based on the attorneys' "efforts in litigating th[e] case and [ ] success in negotiating a favorable settlement." *Fisher*, 948 F.3d at 606. It is also well established as reasonable that attorneys collect one third of the total recovery pursuant to a contingency fee agreement. *See Aguirre v. Torino Pizza, Inc.*, No. 18-CV-2004 (KMK), 2019 WL 126059, at *4 (S.D.N.Y. Jan. 8, 2019) ("Courts routinely award attorneys in FLSA settlements one-third of the total recovery in fees."), and cases cited. Especially where, as here, attorneys' fees calculated under the lodestar method would substantially exceed the one-third contingency fee, the contingency fee is held to be reasonable. *Id.*

Here, Plaintiff's counsel has expended significant time and expense investigating, litigating, and successfully settling this matter, including, as described in the Background section above, engaging in work including drafting and filing the complaint; engaging in discovery (including responding to document requests and interrogatories on behalf of eleven plaintiffs and filing and responding to discovery motions); participating in numerous status and settlement conferences, engaging in settlement negotiations with Defendants' counsel, including court-ordered mediation; preparing briefs and status reports concerning litigation and settlement; and

Hon. LaShann DeArcy Hall
December 22, 2022
Page 11

opposing Defendants' counsel's motion to withdraw. For this work, Plaintiffs estimate that they had accrued approximately $431,727 in attorneys' fees as of June 14, 2022, using the lodestar method. Hirozawa Decl., ¶ 6. Excluded from this calculation are more than 250 attorney hours attributable to the Chapter 11 proceeding, including the successful mediation and settlement negotiations. Hirozawa Decl., ¶ 6. The $217,129 in attorneys' fees and costs provided for in the Settlement amounts to approximately half of the fees and costs accrued up to the date of the filing of the Petition under the lodestar method, and well under half if the work in the Chapter 11 proceeding is taken into consideration. Moreover, it constitutes less than one third of the total settlement amount. By any measure, the agreed-upon fees and costs are reasonable.

**Conclusion**

      For all of the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement and authorize the Plaintiffs to voluntarily dismiss the action once the settlement payment has been made in this case.

      Respectfully submitted,

      GLADSTEIN, REIF & MEGINNISS LLP

      By:    /s/ Kent Y. Hirozawa

      MAKE THE ROAD NEW YORK
      Elizabeth Joynes Jordan
      92-10 Roosevelt Avenue
      Jackson Heights, New York 11372

      Attorneys for Plaintiffs

cc:    Alexander W. Leonard, Esq. (by ECF)
       Jeffrey A. Miller, Esq. (by ECF)
       Kevin J. Nash, Esq. (by ECF)
       Frank A. Oswald, Esq. (by electronic mail)
       Hyungwoo David Kim, Esq. (by electronic mail)